[No. 30526.   Department Two.   September 30, 1948.]

GEORGE HOLTHE *et al., Respondents,* v. FRED W. ISKOWITZ,
*Defendant,* THE HARTFORD ACCIDENT AND INDEMNITY
COMPANY, *Appellant.*[1]

[1]Reported in 197 P. (2d) 999.

*Metzger, Blair, Gardner & Boldt,* for appellant.

*Bassett & Geisness* and *J. Duane Vance,* for respondents.

BEALS, J.—During the year 1947, Mrs. Bessie Uhlman, a resident of the city of Tacoma, was the owner of a 1940 Dodge four-door sedan. October 19, 1946, Hartford Accident and Indemnity Company wrote a policy of insurance in Mrs. Uhlman's favor, protecting her, *inter alia,* against liability for damages resulting to third parties from the operation of the automobile.

Mrs. Uhlman never drove the car, it having always been driven by her daughter, Miss Betty Uhlman (who resided with her mother as a member of her household), a college student, twenty-two years of age, who was employed part time in Tacoma. Mrs. Uhlman was also employed, and Betty drove her mother to the latter's place of employment every morning, and also upon other occasions, whenever requested to do so. Betty drove the car for other family purposes, as well as to suit her own convenience, and supervised the care and maintenance of the car, the bills for the upkeep and operation of the car being paid generally by Mrs. Uhlman and occasionally by Betty.

During the afternoon of February 23, 1947, Betty was assisting at the U.S.O. clubhouse in Tacoma, where she occasionally worked at the snack bar. For some time, she had known Eugene Murphy (a soldier in the United States army, then a patient at Madigan General Hospital), who was a friend of Fred W. Iskowitz, also a soldier, stationed at Fort Lewis. Betty was casually acquainted with Iskowitz and knew that he was a friend of Murphy. Later in

the afternoon, Iskowitz requested Betty to loan him the car, stating that he wanted to take Murphy to accomplish an errand somewhere in Tacoma, his use of the car being strictly for his own purposes and convenience. Without saying anything to Murphy, Betty granted the request, and Iskowitz proceeded to drive the car to carry out the purpose for which he borrowed it.

At about five o'clock p. m., while driving upon a public street in the city of Tacoma, a collision occurred between the Uhlman car, driven by Iskowitz, and a car driven by George Holthe, in which Geneva Holthe, his wife, was a passenger. The collision resulted in injuries to Mrs. Holthe and damage to their automobile.

Mrs. Uhlman made a report of the accident to the Tacoma agency of her insurer, and, thereafter, Mr. Holthe negotiated with the insurer, without reaching any adjustment. Mr. Holthe presented a claim to the insurer's agent, stating that he made claim for damages against Mrs. Uhlman, as owner of the car, and that, at the time of the accident, the car was driven by Fred W. Iskowitz, who had borrowed the car "to use for his own purposes."

No adjustment having been reached, Mr. and Mrs. Holthe instituted this action against Fred W. Iskowitz, who, meanwhile, had been discharged from the army and had departed for his home in the city of New York.

Pursuant to the statute, Rem. Rev. Stat., Vol. 7A, § 6360-129 [P.P.C. § 295-111], the summons and complaint were served upon Iskowitz by filing a copy thereof with the secretary of state of Washington, and by sending a copy to Iskowitz at his New York address, by registered mail.

The defendant, Iskowitz, made no appearance in the action, and, May 23, 1947, judgment was rendered against him and in plaintiffs' favor, by the superior court for King county, in the sum of $820.50.

July 18, 1947, plaintiffs procured a writ of garnishment, directed to the Hartford Accident and Indemnity Company, which had written the policy of insurance in Mrs. Uhlman's favor, requiring the garnishee to answer concerning its in-

debtedness to Fred W. Iskowitz. The garnishee answered, denying any indebtedness on its part to Iskowitz and denying that it had, in its possession or under its control, any personal property or effects belonging to the defendant.

Thereafter, the plaintiffs filed their affidavit controverting the garnishee's answer, setting forth certain provisions of the policy of insurance written by the garnishee in Mrs. Uhlman's favor, stating that the plaintiffs had recovered judgment against Iskowitz as the result of the accident referred to above; that, at the time of the accident, the automobile which Iskowitz was driving was owned by Mrs. Bessie Uhlman, who was protected by the policy written by the garnishee; that, by reason of negotiations entered into between the plaintiffs and the garnishee's agent, the plaintiffs had believed that the garnishee would recognize its liability to them, and that plaintiffs had lost any remedies by way of attachment and garnishment against the defendant, Iskowitz, by reason of his having left the state of Washington.

The matter came on regularly to be tried, upon the plaintiffs' affidavit for garnishment, the garnishee's answer, and plaintiffs' affidavit filed in reply thereto.

The trial court entered findings of fact (stating several terms of the policy above referred to) and conclusions of law in plaintiffs' favor, and, December 5, 1947, rendered judgment for the plaintiffs and against the garnishee, in the sum of $820.50; the court's order denying the motion for judgment in the garnishee's favor or, in the alternative, for a new trial, having been filed the same day.

From the judgment, the garnishee has appealed, assigning error upon the ruling of the trial court denying appellant's challenge to the sufficiency of the evidence; upon the order denying appellant's motion for judgment in its favor notwithstanding the trial court's memorandum decision or, in the alternative, for a new trial; upon certain of the trial court's findings and conclusions; upon the entry of the findings of fact, conclusions of law, and judgment; and, finally, upon the entry of the judgment in favor of re-

spondents and upon the refusal of the trial court to enter judgment in appellant's favor.

The policy of liability insurance written by appellant stated that Mrs. Bessie Uhlman was the "named insured" therein.

■ Respondent George Holthe testified concerning the accident and resulting damages suffered by respondents. On behalf of respondents, the depositions of Mrs. Bessie Uhlman and her daughter, Miss Betty Uhlman, were read. As these witnesses testified by deposition, this court is in as good a position to weigh and evaluate their evidence as was the trial court.

Appellant called one witness, Frank M. Egan, who was employed as an adjuster in its claims department. The pretrial statements of Mrs. Uhlman and her daughter were offered in evidence by appellant.

■ In the case at bar, respondents' rights against appellant are no greater than would be those of the defendant, Iskowitz, in an action against appellant. *Eakle v. Hayes,* 185 Wash. 520, 55 P. (2d) 1072; *Hinton v. Carmody,* 186 Wash. 242, 57 P. (2d) 1240.

The automobile liability policy, written by appellant in favor of Bessie Uhlman, states that it follows the form of the "national standard automobile liability policy," and protects the insured both against "bodily injury liability" and "property damage liability." The policy contains, *inter alia,* the following "insuring agreements":

"(1) Coverage A—Bodily Injury Liability.

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"Coverage B—Property Damage Liability.

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of

use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile. . . .

"(3) Definition of 'Insured'.

"The unqualified word 'Insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named Insured."

Paragraph No. 3 of the policy, *supra,* is usually referred to as "the omnibus clause."

An "endorsement," entitled "DRIVE OTHER PRIVATE PASSENGER AUTOMOBILES," bearing even date with the policy, is attached thereto, and, after several other provisions in the endorsement, appears the following:

"NAMES OF INDIVIDUALS, OTHER THAN AFORESAID HUSBAND AND WIFE, WHO ARE RELATIVES OF AND RESIDENTS IN THE HOUSEHOLD OF THE NAMED INSURED AND WHO ARE TO BE COVERED HEREUNDER AS INSURED:

| Name | Occupation | Relationship to Insured." |
|------|-----------|--------------------------|
| 1. Betty Lou Uhlman | College Student | Daughter |

The questions to be here determined are: first, whether or not, at the time the defendant, Fred W. Iskowitz, was driving the car, he was within the terms of the policy and the protection thereof, and, second, whether or not, because of the defendant's alleged breach of co-operation clauses and conditions contained in the policy, he had forfeited all rights thereunder, assuming that he ever had any such rights.

Respondents may recover judgment against appellant only if it appears, from the evidence, that the defendant, Iskowitz, was, while driving the car at the time of the accident, an "insured" under the policy, in accordance with the terms thereof.

It is not contended that the named insured, Bessie Uhlman, directly, ever gave permission to Iskowitz to drive the car, and, it being undisputed that Iskowitz received such permission only from Betty Uhlman, it must appear, from the

evidence, either that Betty Uhlman was a "named insured," within the provisions of the policy, or that, if such was not the case, she acted with express or implied authority from her mother, Bessie Uhlman, in loaning the automobile to Iskowitz.

In 7 Appleman Insurance Law and Practice 130, § 4354, appears the following:

"In deciding whether the particular policy extended to the operator, the court will seek to ascertain the intention of the parties. Whenever the term 'named insured' is employed, it refers only to the person specifically designated upon the face of the contract; but whenever the unqualified term 'insured' is used, it includes not only the named insured but such other persons as are protected by the omnibus clause. The owner of an automobile is not the named insured where another is so designated by the policy."

See *Trinity Universal Ins. Co. v. Woody*, 47 F. Supp. 327; *Fertig v. General Acc., Fire & Life Assurance Corp., Ltd.*, 171 Misc. 921, 13 N. Y. S. (2d) 872; *Ohio Cas. Ins. Co. v. Goodman*, 163 Okla. 243, 22 P. (2d) 997.

It is the fact, and, from the policy, it appears beyond question that Bessie Uhlman was the sole owner of the automobile and the person specifically designated, by the terms of the policy, as the "named insured" thereunder.

Respondents argue, and it appears to have been the view of the trial court, that Miss Betty Uhlman was, in law, as orally stated by the trial court, "as much a named insured as" Mrs. Bessie Uhlman. The court's statement amounted to merely an oral conclusion of law, based upon the court's interpretation of the evidence.

Shortly after the accident, Mrs. Bessie Uhlman signed the following statement:

"I am the owner of the 1940 Dodge sedan. My daughter, Betty, drives this car. She is 22 years old, and she works for Pay-Less Photo finish. On February 23, she drove the car to the U S O, as she worked there on Sunday evenings. I did not know that she had loaned the car to anyone. I did not know that anyone was going to drive the car that evening except Betty. I would not say that I would not have let her loan the car to anyone if Betty had asked me about it, but

the fact is that Betty did not ask for permission to loan the car to anyone else, and I did not know that she had loaned it."

A few days later, Miss Betty Uhlman signed a statement which included the following:

"My name is Miss Betty Uhlman. I am the daughter of Mrs. Bessie Uhlman and live with my mother . . . I am 22 years of age. I am a student at Tacoma College, Tacoma, Washington. I work part time for the Pay Less photo finishing place located at 930 Broadway, Tacoma, Washington. For the past year or so I had work as hostess and each Sunday evening for the last few months at the U. S. O. located at 13th and Fawcett Streets, Tacoma, Washington. I had known Eugene Murphy approximately four months. I knew Fred W. Iskowitz about one month prior to the date of the accident. I had gone out with Mr. Murphy on occasion. Iskowitz was more his friend than mine. Neither had used my mother's car prior to the date of the accident. In fact I had not loaned the car to anyone in the past and had not discussed the question of loaning the car to anyone with her.

"On February 23, 1947, about 5:00 P. M. Mr. Iskowitz asked me if he could borrow the car to take Mr. Murphy to visit a friend. He didn't tell me where they were going and I had no interest in the call. I didn't contact my mother to secure her permission at the time or before I loaned the car to the boys. Shortly after the boys left I was advised of the accident and went to the Police Station. I made the necessary reports and left."

The oral depositions of both Mrs. Uhlman and Betty were taken, by stipulation, at respondents' request, were read into the record, and appear in the statement of facts. The testimony of these witnesses is in accord with their signed statements quoted above.

Miss Uhlman testified that the matter of whether she should or should not loan the automobile to any person was never discussed between her mother and herself, and that, on the day of the accident, she had no conversation with her mother concerning the loan of the car to Iskowitz.

Mrs. Uhlman testified that the car in question was the property of her late husband and herself; that she had not

driven a car for approximately twelve years, and had never driven the automobile in question; that her daughter drove her to work every morning and whenever desired, and that no restrictions were placed upon her daughter as to persons she should transport in the car; that she had complete confidence in her daughter's judgment in the use of the car, and that she paid for most of the servicing thereof, her daughter occasionally paying for some small service charge.

Mrs. Uhlman stated that she had never instructed her daughter not to loan the car, that matter never having been the subject of conversation between them. She also testified that she never knew the defendant, Iskowitz, nor was she advised that he was to drive the car on the evening of the accident.

Respondents cite 1 Restatement of the Law of Agency 102, § 42: "If the authorization is ambiguous, the interpretation acted upon by the parties controls."

Respondents then argue that, because the record discloses no evidence of any disavowal by Mrs. Uhlman of her daughter's act in loaning the car to Iskowitz, Betty's act in loaning the car should be presumed to have been within the scope of her authority.

The provision of the policy extending the coverage thereof to Miss Uhlman is contained in the rider (or "endorsement") attached thereto, *supra*.

In 44 C. J. S. 1206, Insurance, § 300, is found the following text:

"*Rider or attached slip.* As a general rule, a lawful slip or rider which is properly attached to a policy and referred to therein is a part of the contract and should be construed in connection with the other provisions of the policy, and the entire contract should be harmonized therewith if possible. Notwithstanding the attaching of a rider, provisions in the body of the policy are still parts of the contract and are not superseded, waived, limited, or modified by the provisions of the rider, except to the extent that it is expressly stated in the rider that the provisions thereof are substituted for those appearing in the body of the policy, or that the provisions of the rider have the effect of creating a new and different contract from that of the original policy; and

except where the provisions in the policy proper and those in the rider are in conflict, in which case the latter control in construing the contract, especially where the provisions of the rider are the more specific."

In the case at bar, the endorsement modified no term or provision of the policy, in so far as questions here presented are concerned; it merely added the name of an additional insured. The endorsement was evidently included as a portion of the policy when it was issued, and does not constitute a subsequent addition or amplification thereof.

Paragraph No. 3 of the policy, "the omnibus clause," *supra,* provides that:

"The unqualified word 'Insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile . . . *provided the actual use of the automobile is with the permission of the named Insured."* (Italics ours.)

The paragraph continues by stating certain limitations not pertinent to the facts in the case at bar.

Mrs. Bessie Uhlman is the only named insured in the policy before us. The undisputed evidence shows that she never directly loaned or authorized the loan of her automobile to Iskowitz. Mrs. Uhlman never heard of Iskowitz until after the accident, and, prior to the accident, she had no knowledge of the fact that her daughter would loan or had loaned the car to Iskowitz or to anyone else.

In the case of *Cartier Drug Co. v. Maryland Cas. Co.,* 181 Wash. 146, 42 P. (2d) 37, this court, in construing a policy of insurance protecting the insured against loss " 'by robbery or attempt thereat,' " modified the judgment of the trial court, reducing the amount thereof, and, while recognizing the universal rule that a contract of insurance is construed strictly against the insurer, said: "Conceding the rule of construction, still we are not at liberty to write a new contract for the parties."

In the case at bar, the endorsement, or rider, consists of four paragraphs, numbered one to four, inclusive, and several subparagraphs. In paragraph No. 1, subd. (a), "the named insured" is mentioned. In the same paragraph, subd. (c), reference is made to "the individual named below, as insured, if a relative of and a resident in the household of the named insured." The "named insured" is mentioned in several other paragraphs, as is "any insured."

Following the above-mentioned portion of the endorsement, appears the naming of Betty Lou Uhlman "to be covered hereunder as insured," as shown in the paragraph which is quoted, *supra.*

The endorsement, with the exception of the last paragraph thereof, *supra,* concerns coverage in connection with the driving of other private passenger automobiles, and in no way, expressly or by implication, modifies the policy itself.

In the case of *Adkins v. Inland Mut. Ins. Co.,* 124 W. Va. 388, 20 S. E. (2d) 471, 663, the supreme court of West Virginia, construing a policy very similar to that in the case at bar, held that, while, in such a policy, the word "insured," without further qualification, should apply to any person entitled to protection under the policy, including a "named insured," the latter term could apply only to the person designated in the policy as the named insured. We are in accord with this statement.

Upon the record before us, we hold that Betty Uhlman was not a "named insured," under the terms of the policy with which we are here concerned, but was simply an "insured" thereunder.

We shall now consider whether, as respondents contend, it should be held, upon the facts, that Betty Uhlman had implied authority from her mother, the named insured, to permit Iskowitz to use the automobile.

The automobile was not "a family car," as that phrase has been used in many decisions. Miss Uhlman testified that, on rare occasions, it was borrowed by her brother for short periods of time, when his own car was out of commission.

It clearly appears that the car was driven by Miss Uhlman for her mother's convenience and her own.

Mrs. Uhlman and her daughter both testified that the former never gave the latter authority to lend the car to any other person to operate. Neither is it contended that Mrs. Uhlman forbade her daughter to lend the car to another. The fact that, after the accident, Mrs. Uhlman did not express disapproval of her daughter's action in lending the car to Iskowitz, is of little, if any, importance. The accident had occurred, and Mrs. Uhlman's then expressed disapproval of her daughter's lending the car would have had no particular significance. Circumstances may be imagined, pursuant to which a named insured would have been perfectly willing that an injured party might be protected by such an insurance policy as is now before us. There is no intimation that such was the case here.

Statements by a named insured, which might tend to create a liability or a nonliability on the part of the insurer, should be regarded with caution. In the case at bar, both mother and daughter were entirely frank, and their testimony carries conviction of its truth.

The following texts should be considered in connection with the questions here presented:

7 Appleman Insurance Law and Practice 157, § 4361: "The ordinary rule is usually stated to be that the bailee of an automobile, having possession with the permission of the named insured, cannot validly permit a third person to operate the vehicle so as to bring such third person within the policy protection; such person occupying the same position as would a volunteer or intermeddler; although it is generally added that the bailee does not divest himself of the policy protection or take himself out of the policy terms by this unauthorized act, if he be held liable in damages for the operation of such third person. Some courts have disagreed with this rule, considering that the nature of the act is such a deviation from a permitted use as to remove the bailee himself from the coverage. And if it appears that the insured had given either express or implied permission for such delegation, or it fell within the reasonable scope of the permission granted, protection would be afforded."

45 C. J. S. 901, Insurance, § 829: "One to whom insured has given permission to use the car has no authority to delegate such permission to another so as to make the latter an additional insured; but insured's conduct, or the nature or scope of the permission granted by him, may be such as to indicate permission to such other."

Annotation, 160 A. L. R. 1210: "It has been held in the great majority of cases that the initial permission given by the named assured to the original permittee does not, by implication, include authority to delegate such permission to the second permittee, and hence the insurance company was held not to be liable under the omnibus clause of an automobile liability insurance policy— [Citing authorities.]"

The latter text also states the minority rule as follows, p. 1212:

"In a relatively small number of cases the opposite result has been reached and it has been held that the initial permission given by the named assured to the original permittee includes by implication the authority to delegate such permission to the second permittee. These cases are not necessarily in conflict with those stated in the preceding subdivision (supra, IV d 1) and holding that the initial permission does not include by implication an authority to delegate the use of the automobile, since the wording of the initial permission or the surrounding circumstances may be such as to warrant a finding that the delegation of authority was permitted by implication."

In *Cronan v. Travelers Indemnity Co.*, 126 N. J. L. 56, 18 A. (2d) 13, it appeared that a mother permitted her son to use the mother's automobile for a pleasure trip with some of his friends. The son, without his mother's knowledge or consent, permitted one of his friends to drive the car. While the friend was operating the automobile, an accident occurred. The court held that the friend was not within the coverage of the omnibus clause in an insurance policy describing the mother as the named insured. In the course of the opinion, the court said:

"There was no expressed permission by Mrs. Szarvas and there were no proofs from which, in our opinion, permission could be inferred. If James Szarvas, because he had permission to use, could delegate that permission to another,

then that other, being a permittee, could still further delegate, and so on without limitation."

The supreme court of New Hampshire, in *Allstate Ins. Co. v. Hodsdon*, 92 N. H. 233, 29 A. (2d) 782, said:

" 'It is the general rule that a bailee has no right to delegate his power of user unless there is some understanding or agreement to that effect.' *Aetna Life Insurance Company v. Chandler*, 89 N. H. 95, 97; *Jesukevich v. Laporte*, 89 N. H. 242; 6 C. J. 1115. It was, therefore, incumbent upon the defendant to produce evidence of 'some understanding or agreement' between Chris Sakellarios and his father, authorizing Chris to permit Rousseau to use the car as he did. There is no such evidence in the case, and the ruling of the trial court was, therefore, correct. The mere relationship of father and son subsisting between the assured and Chris Sakellarios furnished no basis for an inference that such an understanding or agreement existed between them. [Citing cases.]"

In *Samuels v. American Automobile Ins. Co.*, 150 F. (2d) 221, 160 A. L. R. 1191, it was held that, where the insured automobile owner permitted her son to use her car, and the son, without the owner's knowledge, permitted the car to be driven by a third party, an accident which then occurred was not within the protection of the policy, as the driver at the time of the accident was not using the car with the permission of the named insured.

In the case of *Hinton v. Carmody*, 186 Wash. 242, 57 P. (2d) 1240, it appeared that the automobile occasioning the accident had been purchased by Robert Kauffman, a minor. His father, P. C. Kauffman, sometimes used the car in connection with his business or convenience, and P. C. Kauffman purchased a policy of liability insurance covering the operation of the car. Robert Kauffman, without his father's permission, had loaned the car to one Carmody, and, while the latter was driving the car, an accident occurred which resulted in Mrs. Hinton's death.

In an action against Carmody by the administrator of Mrs. Hinton's estate, a judgment was recovered, which was affirmed by this court, *Hinton v. Carmody*, 182 Wash. 123, 45 P. (2d) 32. Thereafter, the plaintiff in that action, as in the

case at bar, caused a writ of garnishment to issue against the insurance company which had written the policy in favor of P. C. Kauffman. From an adverse judgment, the plaintiff appealed, contending that it should be held that Robert Kauffman had implied authority to loan the car to Carmody.

We held that the policy of liability insurance should not be extended by including Robert Kauffman as a named insured, and the judgment in favor of the garnishee defendant was affirmed. P. C. Kauffman and the corporation in which he was interested were the named insureds in the liability policy. Robert Kauffman was not named as an insured in the policy, and we refused to extend the coverage of the policy for the benefit of the plaintiff administrator.

Respondents argue that the case under discussion differs from the case at bar, as, here, Mrs. Uhlman, the named insured in the policy, was, without dispute, the owner of the automobile which caused the accident, Mrs. Uhlman maintaining, at all times, ownership of and dominion over the car.

It appeared in the *Hinton* case that:

"In using the car, the Carmodys were nowise carrying out the business of either named insured. Their operations were entirely independent and apparently concerned themselves alone."

The case is in point here, although not controlling.

It may be noted that this court has limited permission by a named insured in an automobile liability policy for the use of the car by a stranger. *Cypert v. Roberts,* 169 Wash. 33, 13 P. (2d) 55.

Respondents cite the case of *Perrodin v. Thibodeaux,* 191 So. (La. App.) 148, in which the court of appeal of Louisiana upheld a judgment rendered against the insurer on a policy of automobile liability insurance. It appeared that the automobile was owned by an agency of the parish government, known as the "police jury," in whose favor a policy of liability insurance was in effect. The car was maintained in the custody of one Thibodeaux, who gave permission to his son to use the car, and, in the course of the use, an accident occurred.

Respondents also cite the case of *Boyer v. Massachusetts Bonding & Ins. Co.*, 277 Mass. 359, 178 N. E. 523, in which a liability insurer was held responsible under a policy written in favor of a father, who loaned his car to his son, who, with the knowledge of the father, permitted a friend of his to drive the car, during which operation an accident occurred. The insurer was held liable, the court holding that the father ratified the acts of his son, although not advised of all of the particulars in connection with the loan of the car.

The Louisiana case follows the minority rule; the Massachusetts case may be distinguished upon the facts.

From the evidence in the case at bar, it appears, beyond question, that Miss Betty Uhlman had authority to drive the car, as necessity and convenience suggested, for her own and her mother's purposes. She had no express authority whatever from her mother, the owner of the car and the name insured in the policy before us, to loan the car to anyone. She had never been refused such authority, but none had ever been granted, nor had she previously loaned the car.

Respondents cite some of our decisions in which the matter of the ownership of a car used for family purposes was considered, and in which the authority of a member of the family to allow another person to drive the car and thereby create, by his negligence in injuring another, a liability against the head of the family, was discussed. One driving a car under such circumstances as to bring it within the rule of the family purpose doctrine may, of course, be acting with the permission of the named insured in a policy of liability insurance, if such a policy exists in favor of the owner.

On the other hand, a person driving another's car, under the protection of an "omnibus clause," may not be the agent of the insured owner of the car, under the family purpose doctrine.

This latter doctrine does not enter into the case at bar, because it appears, beyond question, that Iskowitz was using Mrs. Uhlman's automobile strictly for his own purposes and not for anything connected with the pleasure or convenience of Mrs. Uhlman or her daughter.

We hold that the record shows no direct or implied permission from Mrs. Uhlman, the named insured in the liability policy written by appellant, to her daughter, Betty Uhlman, to loan the car to Iskowitz, under the circumstances shown, and that Iskowitz was not, while driving the automobile, doing so with the permission of the named insured.

This conclusion renders it unnecessary to consider any other question presented by the record.

The judgment appealed from is reversed, with instructions to the trial court to enter judgment in favor of appellant, dismissing the action.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

