[No. 33244.   Department One.   December 1, 1955.]

B. FRANKLIN HAMM et al., *Respondents*, v. JOHN CAMEROTA, SR., *et al.*, *Defendants*, PREFERRED INSURANCE EXCHANGE, *Appellant*.[1]

[1] Reported in 290 P. (2d) 713.

*Wayne Murray, Jr.,* and *D. Scott Sandelin,* for appellant.

*Raymond C. Brumbach* and *William F. Hennessey,* for respondents.

DONWORTH, J.—The principal issue on this appeal is whether Larry Sisson, against whom respondents recovered a judgment in a tort action, was, at·the time of the automobile accident which gave rise to that action, an "insured" under a certain policy of liability insurance (called a national standard policy) issued by appellant to John Camerota, Sr.

In the tort action, respondents (plaintiffs therein), by their amended complaint, joined as defendants Larry Sisson, John Camerota, Sr., and his wife, and John Camerota, Jr. In this complaint, it was alleged that the three Camerotas owned the car involved in the accident, that all acts alleged to have been done by either the father or the son were done for the benefit of the marital community, and that, although the car was registered in the name of the father, it was partly owned by the son and primarily maintained for the son's use and benefit. The theory upon which respondents predicated liability by the Camerotas for the alleged negligent acts of Larry Sisson in driving this car was stated in paragraph 4 of that amended complaint, as follows:

"That at all times herein mentioned the defendant Larry Sisson was the agent and employee of the defendant John Camerota, Jr. and the driver of the automobile owned by

the defendants acting within the course and scope of his employment and agency and was operating the said defendants' automobile with the implied or actual permission of the said defendants John Camerota Sr. and Jane Doe Camerota, his wife, and defendant John Camerota, Jr."

These allegations were denied in the separate answers filed by the Camerotas and by Sisson. The action was tried to a jury, and at the conclusion of all the evidence the court instructed the jury (a) to bring in a verdict in favor of respondents against Sisson *only* in such sum as they found respondents to have been damaged as a result of the accident, and (b) to bring in a verdict in favor of the Camerotas.

Upon the verdicts so rendered, the court entered judgment in favor of respondents and against Sisson *only* for $1,428 (the amount of the verdict) with costs, and dismissed with prejudice the action against the Camerotas.

Two months later, respondents filed an affidavit for a writ of garnishment. In response thereto, appellant insurance company answered, and denied that it was indebted to Larry Sisson in any sum whatever. Respondents controverted this answer by the affidavit of their attorney, which reads, in part, as follows:

" . . . Affiant believes the defendants JOHN CAMEROTA, Senior and JOHN CAMEROTA, Junior were covered by a policy of liability insurance; that by the terms of said policy any party driving their car with their express or implied permission was an additional insured. That LARRY SISSON was driving defendants CAMEROTAS' car with their express or implied permission. That LARRY SISSON was therefore protected or covered by the policy. That said automobile was a 'family car' used for the business and pleasure of the Camerota Family, and was insured by the Garnishee Defendant, Preferred Insurance Exchange."

The issue thus made in the garnishment proceeding was subsequently tried to the court sitting without a jury (before a judge other than the judge who presided at the trial of the tort action). At the close of the evidence, the court orally announced its decision in favor of respondents. Appellant's motion in the alternative for judgment notwithstanding the court's decision or a new trial was argued and

denied. The court made six findings of fact and one conclusion of law, and rendered judgment in favor of respondents, against appellant insurance company as garnishee defendant in the sum of $1,428, and for costs in both proceedings.

On this appeal, appellant has made fifteen assignments of error, but we do not deem it necessary to discuss all of them.

The first claim of error is stated in appellant's brief thus:

"(1) The doctrine of *res judicata* or collateral estoppel by judgment should have been invoked by the trial court to prohibit the introduction of evidence as to all issues of fact tried in the main tort action which were also decisive of coverage questions under the insurance policy."

Citing *East v. Fields,* 42 Wn. (2d) 924, 259 P. (2d) 639, appellant sets forth its position as follows:

"Appellant contends that the fact of permission, express or implied, was the essential element inherent in the judgment in the main tort action, which was also decisive of the question of whether Larry Sisson was an additional assured under the policy.

"The underlying principle of the doctrine of collateral estoppel and *res judicata* is that when the parties have actually litigated an issue in a previous action and the court has decided the controversy that issue should not be litigated again by them."

We think that the situation presented here differs from *East v. Fields, supra.* We cannot tell the precise ground on which the trial court, in the tort action, directed a verdict in favor of the Camerotas. A jury trial was had in that action, and no findings of fact were made. As nearly as we can ascertain, the trial court was of the opinion that respondent had failed to prove that Sisson was an agent or employee of John Camerota, Jr.

"The liability of one person for the acts or omissions of another is the exception rather than the rule, and the person who asserts such liability must establish the fact that some connection exists between the actor and the person whom he seeks to hold responsible for the actor's conduct." *Walter v. Everett School Dist. No. 24,* 195 Wash. 45, 79 P. (2d) 689.

"The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, since such person is alone liable. To this general rule the case of master and servant is an exception, and the negligence of the servant, while acting within the scope of his employment, is imputable to the master. But, to bring a case within this exception, it is necessary to show that the relation of master and servant exists between the person at fault and the one sought to be charged for the result of a wrong; and the relation must exist at the time, and in respect to the particular transaction out of which the injury arises." *Roletto v. Department Stores Garage Co.,* 30 Wn. (2d) 439, 191 P. (2d) 875.

Therefore, unless the existence of such a relationship was proven, the alleged fact that Sisson had the permission, expressed or implied, of all the Camerotas would not of itself be a sufficient basis upon which to hold them liable in the tort action for his negligent acts. On the other hand, proof of the giving of such permission was vital in the garnishment proceeding in order to show that Sisson was covered as an additional insured by the omnibus clause of the insurance policy.

We, therefore, cannot find that the issue here was determined in the tort action, and that the judgment therein was *res judicata* of the issue whether Larry Sisson had the named insured's permission to drive the car when the accident occurred.

Appellant's first assignment of error is not well taken.

Appellant next assigns as error the making of certain findings of fact and the court's refusal to enter certain proposed findings. The crucial finding is No. 5, reading as follows:

"That John Camerota, Sr., placed said car in his son's hands without restrictions and with authority to act in every way as if the legal title was in his name, and with full rights of ownership."

and the following portion of No. 6:

". . . and said Larry Sisson had been placed in possession thereof and the keys to said automobile by John Camerota, Jr., who at that time gave full permission to said Larry Sisson to use said automobile."

The trial court in its oral decision discussed the evidence on which these findings were based, and sought to distinguish the case of *Holthe v. Iskowitz*, 31 Wn. (2d) 533, 197 P. (2d) 999, on which appellant relies, as follows:

"THE COURT: In this Holthe case, the title of the car was in the name of the mother, and it had been in the name of the husband, now deceased, and the mother got title through probate proceedings. It is true that the mother didn't drive, and the daughter used that car to some extent for her own purposes, but to a large extent running her mother around and for household purposes. The daughter had no interest in the automobile at all. She sometimes paid for gasoline, portion, some of the gasoline, and maintenance bills, and the mother paid for others. In that case, she gave permission to a soldier.

"I feel in this case that here neither one of this boy's, Camerota Jr.'s parents, could drive, or did drive. The father testifies under oath that it was his son's car; the boy being 20, he bought it in his name and being a little short of money he furnished some of the money, but it was just the boy's car, and generally he told the boy just to be careful.

"Now, then, in the Holthe case, it is recognized that there can be and should be many cases where the circumstances in which the party using the car has been driving it are so unrestricted in scope that you can presume that it would also include permission to loan it to anybody he wanted to loan it to and that he thought it was right to loan it to. The language quoted with approval in the Holthe case is from Corpus Juris, and reads: 'One to whom insured has given permission to use the car has no authority to delegate such permission to another so as to make the latter an additional insured; but insured's conduct, or the nature or scope of the permission granted by him, may be such as to indicate permission to such other.' There is other language in the case and citations to the same effect, but I adopt that as the law and that makes the question, were the circumstances under which Camerota Jr. was put in possession of this old automobile such as would indicate,—so unrestricted that it would indicate that it would include permission and control of the car enough to loan it to others. We have a case where he is the owner. We have a case where neither parent drove. We have a case whenever the son wasn't living with his parents, he took his car with him. We have a case where the named insured said 'It wasn't my car; it was my son's.

I was just holding the legal title.' So it doesn't worry me in finding that any act in loaning the car by the son was the same as the act of the named insured."

We do not agree with the trial court's analysis of the *Holthe* case as applied to the facts found by it in this case. That decision seems to us to be directly in point.

The vital issue here is whether Larry Sisson was, at the time of the accident, an additional insured under the omnibus clause of the policy issued to John Camerota, Sr., by appellant.

The material clause defines the word "insured" as follows:

"3. DEFINITION OF 'INSURED.' With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. . . ."

Applying this provision to the facts as found by the trial court, the question is: Was Larry Sisson then using the automobile described in the policy with the permission of the named insured, to wit, John Camerota, Sr.?

Assuming *arguendo* that the facts as found by the court in findings No. 5 and No. 6 are supported by the evidence and that the evidence does not preponderate against them, still they do not establish a sufficient compliance with the above quoted provision of the policy to warrant holding that Larry Sisson was an insured thereunder.

Even if it be conceded that John Camerota, Sr., placed the car in his son's hands without restrictions, and with authority to act in every way as if he were the owner, such a fact could not change the scope of the policy issued to the named insured by appellant. In the absence of a finding that John Camerota, Sr., authorized his son to loan the car to Sisson on this occasion, or had previously approved his loaning it to Sisson or to other persons generally, there is no basis for holding that the car was being used by Sisson at the time of the accident with the permission of John Camerota, Sr.

There was no finding that the latter knew that possession of the car was being given to Sisson, or that the son had ever loaned it to him or anyone else with the father's knowledge.

The court is bound by the provision of the policy. Before it can hold that the policy covered Sisson, there must be a finding that John Camerota, Sr., either expressly or impliedly gave permission to Sisson to use the car.

Appellant's contract was with John Camerota, Sr.—not his son—and the word "insured" in the policy does not include the son except when he is using the car with his father's permission. He had his father's permission to use it, but there is no evidence or finding that the son had any authority to loan the car to Larry Sisson at any time.

We think that the instant case cannot be distinguished from *Holthe v. Iskowitz, supra,* in which this court said:

"Respondents may recover judgment against appellant only if it appears, from the evidence, that the defendant, Iskowitz, was, while driving the car at the time of the accident, an 'insured' under the policy, in accordance with the terms thereof.

"It is not contended that the named insured, Bessie Uhlman, directly, ever gave permission to Iskowitz to drive the car, and, it being undisputed that Iskowitz received such permission only from Betty Uhlman, it must appear, from the evidence, either that Betty Uhlman was a 'named insured,' within the provisions of the policy, or that, if such was not the case, she acted with express or implied authority from her mother, Bessie Uhlman, in loaning the automobile to Iskowitz.

"In 7 Appleman Insurance Law and Practice 130, § 4354, appears the following:

" 'In deciding whether the particular policy extended to the operator, the court will seek to ascertain the intention of the parties. Whenever the term "named insured" is employed, it refers only to the person specifically designated upon the face of the contract; but whenever the unqualified term "insured" is used, it includes not only the named insured but such other persons as are protected by the omnibus clause. The owner of an automobile is not the named insured where another is so designated by the policy.'

"See *Trinity Universal Ins. Co. v. Woody,* 47 F. Supp. 327; *Fertig v. General Acc., Fire & Life Assurance Corp., Ltd.,*

171 Misc. 921, 13 N. Y. S. (2d) 872; *Ohio Cas. Ins. Co. v. Goodman,* 163 Okla. 243, 22 P. (2d) 997.

"It is the fact, and, from the policy, it appears beyond question that Bessie Uhlman was the sole owner of the automobile and the person specifically designated, by the terms of the policy, as the 'named insured' thereunder.

"Respondents argue, and it appears to have been the view of the trial court, that Miss Betty Uhlman was, in law, as orally stated by the trial court, 'as much a named insured as' Mrs. Bessie Uhlman. The court's statement amounted to merely an oral conclusion of law, based upon the court's interpretation of the evidence."

Much more could be quoted from the decision in the *Holthe* case which is applicable to the facts before us, but in the interests of brevity, we invite attention to the remainder thereof. See, also, *Hinton v. Carmody,* 186 Wash. 242, 60 P. (2d) 1108.

█ The fact that a parent permits a son to use a car as his own, or even considers the car as being the son's property, does not, of itself, alter or enlarge the scope of the insurance contract. *Holthe v. Iskowitz, supra.* In order for a person to come within the coverage of the omnibus clause in a standard policy of liability insurance, it must be established that his use of the car was with the permission, expressed or implied, of the person designated in the policy as the named insured. No such permission has been found or proven in this case, and, therefore, *Odden v. Union Indemnity Co.,* 156 Wash. 10, 286 Pac. 59, 72 A. L. R. 1363, cited by respondents, is not in point.

In view of the conclusion we have reached, it is not necessary that we discuss the remaining assignments of error. For the reasons expressed herein, the judgment in the garnishment proceeding must be reversed, with directions to dismiss appellant as garnishee defendant. Appellant will recover its costs in both courts.

It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.