SWIFT & COMPANY and Maryland Casualty Company, (Plaintiffs) Appellants-Respondents,

v.

ZURICH INSURANCE COMPANY, (Defendant) Respondent.

ZURICH INSURANCE COMPANY, (Third-Party Plaintiff) Appellant-Respondent,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (Being James Honey, Individually, and on Behalf of those Underwriters at Lloyd's, London, Signatory to Policies Nos. 86223 and 86226), (Third-Party Defendants) Appellants-Respondents.

No. 57642.

Supreme Court of Missouri, Division No. 2.

July 22, 1974.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for said respondents.

W. Munro Roberts, Jr., Heneghan, Roberts & Godfrey, St. Louis, for appellant-respondent, Zurich Ins. Co.

Murphy, Kortenhof & Ely, Edward E. Murphy, Jr., St. Louis, for respondent, Hartford Accident & Indemnity Co.

FINCH, Judge.

This is an action for declaratory judgment as to the respective rights and liabilities of a number of insurance organizations for a loss arising out of an automobile accident and for the apportionment of the loss among those liable. We affirm the judgment entered by the trial court.

One Randy Owens was struck and injured by a tractor trailer unit operated by Swift & Company (Swift). The unit was rented by Swift from Frank L. Holmes Truck Service, Inc. (Holmes) under an oral day-to-day rental agreement. Holmes owned the trailer in question but leased the tractor under a written agreement with the owner thereof, Strecker Motor Service, Inc. (Motor Service).

On the date of the accident Swift had an automobile liability and physical damage policy with Maryland Casualty Company (Maryland) with bodily injury limit for one person in the sum of $25,000. In addition, it had two policies issued by Certain Underwriters at Lloyd's, London (Lloyd's) providing first and second excess coverage in the amounts of $25,000 and $50,000 respectively. Holmes had a comprehensive general automobile liability policy issued by Zurich Insurance Company (Zurich) with a $100,000 limit for injury to one person. In addition, Hartford Accident and Indemnity Company (Hartford) had issued a comprehensive general automobile liability policy to F. W. Strecker Transfer Company (Transfer Company) with Motor Service endorsed thereon as an additional insured. That policy also contained a $100,000 limit for injury to one person.

Owens filed suit for his injuries against various defendants but dismissed before trial as to all except Swift and Holmes. Swift and Maryland requested Zurich and Hartford to defend the suit on behalf of Swift but both declined. The jury returned a verdict for $195,000 against Swift but found in favor of Holmes. While a motion for new trial was pending, Owens accepted a settlement offer of $178,750 and costs.

Maryland, Lloyd's and Zurich concurred with the settlement with Owens but could not agree as to their respective liabilities for the loss. They agreed to advance the funds to make the settlement but reserved the questions of coverage and liability for subsequent judicial determination. Hartford declined to participate in the settlement or to contribute thereto but agreed not to contest the reasonableness of any settlement or to contend that the other parties were volunteers in making the settlement.

Funds advanced to consummate the settlement were as follows:

| | |
|---|---|
| Maryland | $25,000 |
| Lloyd's (1st excess) | $25,000 |
| Lloyd's (2nd excess) | $39,375 |
| Zurich | $89,375 |

In addition Maryland paid court costs of $316.51 and incurred and paid expenses of litigation of $3,046.86.

In the proceedings in the trial court, Swift, Maryland and Lloyd's contended that the Lloyd's policies indemnified Swift only against the ultimate net loss actually paid in cash after deduction of other insur-

ance applicable under the Maryland, Zurich and Hartford policies; that Maryland's policy was primary as to Lloyd's but was excess as to the Zurich and Hartford policies; that the latter two policies provided primary coverage to Swift; and that the entire loss, including costs and expenses, should be apportioned equally against Zurich and Hartford. Zurich contended that the loss should be apportioned one-third to Maryland and Lloyd's jointly, one-third to the Hartford and one-third to Zurich. Hartford contended it had no liability whatsoever.

By its judgment the trial court held that Maryland and Zurich were primary insurers, liable to contribute their respective coverages of $25,000 and $100,000; that Lloyd's was liable on their first excess policy for the full coverage of $25,000 and on the second excess in the sum of $28,750; that Maryland and Zurich were each liable for one-half of the costs and litigation expenses; and that Hartford had no liability. The court rendered judgment accordingly, taking into account the various advancements made previously. All parties except Hartford appealed.

We have jurisdiction based on the amount involved, the appeal having been taken prior to January 1, 1972. Mo. Const. Art. V, §§ 3, 31(4), V.A.M.S.

■ The first question for determination is the matter of coverage by Hartford since the resolution of other issues is dependent on how that question is decided. This necessitates construction of the Hartford policy, including a recital of the pertinent facts relative thereto.

The Hartford policy listed F. W. Strecker Transfer Company as named insured. By attached endorsements, each titled "additional insured", Strecker Handling Company, Katz Drug Company, C N & W Railroad, Strecker Motor Service, Inc., Johnny Beazley's Falstaff Distributing Company, and New York, Chicago and St. Louis Railroad were added as additional insureds. Said endorsements provided that

"It is agreed that the parties named above are included as additional insureds within the meaning of Insuring Agreement III, 'Definition of "Insured" ', of the policy." The foregoing clause, commonly referred to as the omnibus clause, was amended by another policy endorsement which provided as follows: "With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile." (Then followed a listing of exceptions not pertinent here.)

Swift was not one of the companies listed in the Hartford policy as an additional insured. Appellants contend, however, that Swift nevertheless was insured under the foregoing omnibus clause on the basis that its operation of the tractor was with permission of Motor Service which it contended had authority under the policy to give that permission.

Motor Service was one of several Strecker companies. It was in the business of leasing motor vehicles without drivers, and it entered into a lease-purchase agreement with Holmes covering three tractors, one of which was involved in the accident in question. The lease-purchase agreement provided that Holmes would pay all licenses, taxes, insurance, tires, repairs and other expenses, was to be in complete control of the equipment and was to assume complete responsibility therefor. Motor Service insisted that Holmes have insurance before the tractors were driven away under the lease-purchase agreement. Holmes obtained the Zurich insurance policy and exhibited it to Mr. Strecker, president of Motor Service. At the time the lease-purchase agreement was made, Holmes told Motor Service that the equipment would be

put to work at Swift's and it is contended that what occurred at that time amounted to permission by Motor Service for Swift to operate the tractor. It is on this basis that it is contended that Swift became an insured within the terms of the omnibus clause of the Hartford policy.

The critical question is whether Motor Service, when it was named as an additional insured, thereby became a named insured with authority to give permission for use under the omnibus clause. The trial court held that the companies listed by endorsement as additional insureds, including Swift, were not named insureds as that term is used for coverage purposes but were afforded only such coverage under the policy as would accrue to other insureds under the omnibus clause. On that basis the trial court held that it was immaterial whether Swift's use was with permission of Motor Service.

The precise issue presented on this appeal appears to be one of first impression in this state. However, the decision in Helmkamp v. American Family Mutual Insurance Company, 407 S.W.2d 559 (Mo. App.1966) is pertinent. In that case Bobby Bremer was permitted by his father to use the car owned by his parents and insured by American Family Insurance Company. That policy contained a standard omnibus clause. Bobby in turn loaned the car to Patricia Helmkamp who then was involved in an accident. The suit in question was a declaratory judgment action to determine the insurance company's liability for any loss sustained by Patricia Helmkamp arising out of the accident. Implicit in that question was the issue of the authority of Bobby Bremer to extend coverage by designating Patricia as a permittee insured under the terms of the omnibus clause. The evidence disclosed that when Bobby became 16 years old, his father telephoned the insurance agent and asked that Bobby be put on the policy just like him and his wife who were the owners of the automobile. The insurance company issued an additional declaration and charged an addi-

tional premium. The insurance company contended that the declaration was issued to indicate a classification change because a youthful driver was being added to the list of expected drivers and that the declaration did not attempt to change the name of the named insureds. The court concluded that Bobby's status under the policy was not that of a named insured and that Patricia was not driving the automobile with permission of the named insured for purposes of omnibus coverage. It is true, as appellants point out, that the court did not deal with an endorsement which named "additional insureds" but we nevertheless conclude that the reasoning and result support the conclusion we reach herein.

In 7 Appleman, Insurance Law and Practice, § 4354, p. 234, the rule applicable to the issue here presented is stated as follows: "Whenever the term 'named insured' is employed, it refers only to the person specifically designated upon the face of the contract; but whenever the unqualified term 'insured' is used, it includes not only the named insured but such other persons as are protected by the omnibus clause."

On the same subject, in 12 Couch on Insurance 2d, § 45:379, p. 383, appears the following: "The policy may be so worded that certain persons are both additional insureds and have the power to grant permission so as to make the omnibus clause operative. It may also be so worded that a given person is an additional insured but does not have the power to grant permission to use the automobile. This situation may arise in connection with an endorsement of the policy. *For example the fact that a person may by endorsement be named as an 'additional insured' does not give him the status of a 'Named Insured' with respect to the operation of the omnibus clause within the policy itself."* (Emphasis supplied)

The majority of reported cases from other jurisdictions which have considered the issue of whether those listed by endorsement as "additional insureds" in a

policy are thereby "named insureds" are in agreement with the statements in Appleman and Couch and with the result in Helmkamp.

In Holthe v. Iskowitz, 31 Wash.2d 533, 197 P.2d 999 (1948) the insurance company issued an automobile liability policy to Mrs. Uhlman as named insured. An endorsement to the policy listed Mrs. Uhlman's daughter Betty as another person covered as insured. The daughter loaned the car to one Iskowitz to run a personal errand, and he collided with the Holthe automobile. The Holthes sued Iskowitz, and a default judgment was taken. Thereupon, a writ of garnishment was issued against the insured. The issue as framed by the court was whether Iskowitz was afforded liability coverage under the omnibus clause by virtue of his permissive use of the vehicle pursuant to Betty's approval. More particularly, the question was whether Betty was a named insured as a result of being endorsed as an additional insured so as to authorize her to extend omnibus coverage to Iskowitz. The court held that the endorsement modified no term or provision of the policy insofar as the issue presented was concerned and that it merely added the name of an additional insured. It specifically held that the additional insured was not a named insured with permission to extend the omnibus coverage. Accordingly, it held that Iskowitz was not covered under the omnibus clause.

In Ohio Casualty Ins. Co. v. Goodman, 163 Okl. 243, 22 P.2d 997 (1932) the insurance company issued its automobile liability policy to M. H. Stevens Produce Company which was designated therein as named insured. By endorsement, coverage was extended to include as a class the unnamed officers and employees of Stevens as to various cars owned by them which were listed in the policy. The stepson of one of the officers had permission to use the stepfather's automobile. On one occasion he had an accident with that car and a judgment was obtained against him. The issue then arose in a garnishment proceeding as to whether the insurer was liable to pay that judgment. The court held that only the named insured, the Stevens Company, could grant extended coverage under the policy by designating a permittee insured. One endorsed as an additional insured could not do so. Hence, the stepson was not afforded coverage under the policy.

See also Madison et al. v. Steller et al., 226 Wis. 86, 275 N.W. 703 (1937); Adkins v. Inland Mut. Ins. Co., 124 W.Va. 388, 20 S.E.2d 471 (1942); Fertig v. General Acc. Fire and Life Assur. Corporation, 171 Misc. 921, 13 N.Y.S.2d 872 (1939); Trinity Universal Ins. Co. v. Woody, 47 F.Supp. 327 (D.C.N.J.1942), all of which are in harmony with the result reached in the foregoing cases. We have found only one case which considers the issue here involved in which a contrary conclusion is reached. That is the case of Minneapolis, St. Paul and Sault Ste. Marie Railroad Company v. St. Paul Mercury Indemnity Company, 268 Minn. 390, 129 N.W.2d 777 (1964).

We are persuaded that the language in the policy in question is clear and unambiguous and that the construction thereof announced in the majority rule is the correct one.

Appellants advance the additional argument that if those named by endorsement as additional insureds are not thereby named insureds but simply are insureds within the broadened coverage of the omnibus clause, the endorsement served no purpose and was meaningless. They assert that such construction accords to the endorsement simply the effect of giving those named therein the protection that they would have had if they had not been named in the endorsement. We disagree. In order to come within the coverage of the omnibus clause, it is necessary to make proof that use of the vehicle was with the permission of the named insured. Designation as an additional insured in the policy automatically supplies the proof of permission and those named as additional in-

sureds are afforded coverage without making proof that their use of the vehicle was with permission of the named insured.

Finally, on this issue of whether those named in the Hartford endorsements as Additional Insureds were in fact named insureds, appellants call attention to the following language which was included in the endorsement which added New York, Chicago and St. Louis Railroad as an additional insured: "It is hereby agreed that in the event one named insured under this policy or employee thereof makes a claim against another named insured, the insurance afforded by this policy with respect to such claim shall be the same if each named insured were insured under a separate, and distinct policy." The foregoing language, say appellants, makes it evident that the Hartford recognized that there were multiple named insureds rather than a single one, and that the additional insureds were those other named insureds. Such a conclusion does not follow. The language in question covers the situation *if*, in fact, the policy designated more than one named insured. It does not make any one a named insured and it does not imply or require that more than one named insured be listed. If the intention had been to designate these various other firms as named insureds, a simple endorsement saying that Motor Service, Katz, Strecker Handling Company, the railroads, etc. were added as named insureds would have been the obvious answer.

We conclude as did the trial court that Motor Service was not a named insured under the Hartford policy and, hence, that Swift and Company was not a permittee so as to be afforded protection under the omnibus clause. Accordingly, we affirm the conclusion of the trial court that the Hartford had no liability with reference to the accident in question.

The next question for consideration is the contention by Maryland that its policy provided excess coverage in relation to that provided by the Zurich policy.[1] This assertion is based on the language of paragraphs 3 and 5 of endorsement No. 1 to the Maryland policy which provided insofar as pertinent as follows:

"3. Non-Ownership

* * * it is understood and agreed that this policy is extended to include and cover the named insured and the named insured only against loss from liability imposed by law upon the insured for damages on account of bodily injury * * * caused through the operation, maintenance or use of any automobiles as defined in said policy by any person, firm or corporation * * * and (4) by any employee of the named insured with respect to the operation of any automobile not owned by the named insured in the business of the named insured, with or without authority of the named insured and whether such employee is on a salary or commission basis."

* * * * * *

"5. Other Insurance

It is agreed that the definition of insured agreement of the policy applies with respect to automobiles hired by the named insured, except to the owner of the automobile or any employee of such owner. With respect to all other automobiles not owned by the named insured the insurance provided by this endorsement applies (1) to the named insured; (2) to any executive officer of the named insured, except with respect to any automobile owned by such officer or a member of his household. The insurance afforded by this paragraph and paragraph 3 shall be excess insurance over all other valid and collectible insurance available to the insured, either as

---

1. Maryland makes the same contention as between the Maryland and Hartford policies, but that question becomes moot in view of

our holding that Hartford has no liability with reference to this accident.

an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered hereunder."

Clearly, says Maryland, the insurance provided by paragraph 3(4) above to Swift in connection with operation in its business of non-owned automobiles is made excess coverage by the provisions of paragraph 5. The wording of those two paragraphs, considered alone, would seem to support Maryland's contention but an examination of all pertinent provisions of the policy leads to a different conclusion.

■ The basic Maryland policy itself provides that the company will pay on behalf of its insured "all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." This undertaking, absent some expressed limitation in the policy, is for primary coverage. While the definition of automobile in the basic policy was not broad enough to include the equipment here in question, the broadened definition of automobile in paragraph 1 of endorsement No. 1 extended the primary coverage to vehicles "used, controlled, hired or maintained by the insured." That language was broad enough to include the unit here involved.

■ Thus, the basic Maryland policy, as expanded by the definition of automobile in paragraph 1 of endorsement No. 1, provided primary coverage with respect to the operation by Swift of the Motor Service unit. This was without any reliance on paragraph 3(4) of endorsement No. 1. Was that primary coverage changed to excess by the language of paragraphs 3(4) and 5 of endorsement No. 1? The trial court found it was not and we agree. Endorsements do not limit or change the basic policy except as specifically set out in the endorsement. Paragraph 3 of endorsement No. 1 did not purport to limit or

change coverage already provided by the basic policy. Instead it recited that the "policy is *extended* to include and cover * * *." (Emphasis supplied) It then spelled out the particulars. In other words, paragraph 3 undertook to provide additional coverage. It was only this extended or additional coverage provided in paragraph 3, plus that called for by paragraph 5, which was declared to be excess insurance over other insurance available to the insured.

The trial court's memorandum opinion expresses its view of the intended purpose and effect of paragraph 3 (particularly paragraph 3(4)) with reference to the further coverage provided therein. We need not review or pass upon that interpretation or undertake to define the extent and limits of the extended coverage provided by paragraph 3 because that coverage is not involved in nor necessary to our decision. It is sufficient for purposes of this appeal that we hold that paragraphs 3 and 5 did not negate or limit the coverage provided by the basic policy (as expanded by the definition of automobile by paragraph 1 of endorsement No. 1). Accordingly, we hold that the Maryland policy provided primary rather than excess coverage in this case.

Finally, we must consider the contention by Zurich that the trial court erred in holding the two Lloyd's policies to be excess coverage applicable only after exhaustion of the Maryland and Zurich primary coverages of $25,000 and $100,000 respectively. The trial court concluded in its memorandum opinion that language in the Lloyd's policies clearly required this result but Zurich asserts otherwise, claiming that policy provisions make Lloyd's a primary insurer. On that basis, says Zurich, it should be required to contribute to the loss and to litigation expenses proportionately with Maryland and Zurich on the basis of their respective coverage amounts.

Each of the Lloyd's policies consists of an assembly of typewritten sheets plus some printed forms. Policy 86223 (the

first excess policy) contains the following pertinent typed provisions:

"I. LIABILITY COVERED:

To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon it by law for damages, * * * sustained by any person or persons, * * * caused by accident arising out of the ownership, maintenance or use of any automobile, as defined with the Primary policy.

"II. LIABILITY OF UNDERWRITERS:

It is expressly agreed that as regards damages for bodily injuries and/or death, the Underwriters hereon shall be liable only for the excess of loss over $25,000 ultimate net loss in respect of any one person * * *."

Subsequently, on the same page under the caption "Conditions and Warranties" the following provisions are included:

"I. WARRANTED that the MARYLAND CASUALTY COMPANY has issued its policy or policies, hereinafter referred to as the Primary policy, and that such Primary policy will be maintained in full force and effect during the currency hereof. The insurance provided by this policy shall be subject to the same terms, conditions and warranties as embraced within the Primary policy, except those inconsistent herewith.

> *    *    *    *    *    *

"III. The term 'ultimate net loss' shall be understood to mean the sums actually paid in cash in settlement of loss for which the Assured is liable after making proper deductions for all recoveries, salvages and other insurances * * *.

"IV. It is further understood and agreed that liability under this policy in respect of any one accident or occurrence shall not attach unless and until the Primary Insurers shall have admitted liability for the Primary Limits under its said policy or unless and until the Assured has by final judgment been adjudged to pay the said Primary Limits."

Policy 86226 (the second excess policy) contains the same typewritten provisions except that paragraph II relating to liability of underwriters provides for liability "only for the excess of loss over $50,000 ultimate net loss in respect of any one person" and paragraph I under "Conditions and Warranties" lists, in addition to Maryland Casualty Company, the various underwriters at Lloyd's which were insurers in the first excess policy.

■ The position of Zurich is that under paragraph I of Conditions and Warranties of the Lloyd's policies, the insurance provided was to be subject to the same terms, conditions and warranties as in the primary policy issued by Maryland. Therefore, says Zurich, Lloyd's liability was similar to that of Maryland and the "other insurance clause"[2] in Maryland's policy is applicable. Incorporation of that provision, it is urged, results in Lloyd's sharing pro rata in the loss as a primary insurer, with the only effect of the provisions limiting Lloyd's liability to amounts in excess of specified figures over ultimate net loss being that the Maryland policy precedes the Lloyd's policies in order of payment of any single loss.

The foregoing contention by Zurich fails to give proper effect to the exception in paragraph I, Conditions and Warranties, which provides that terms, conditions and warranties of the Maryland policy which are inconsistent with provisions in the Lloyd's policies are not to be incorporated. Both Lloyd's policies expressly state in the

---

2. That clause contains this language:
    "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss . . ."

section captioned "Liability of Underwriters" that the underwriters shall be liable only for excess loss over a specified sum of "ultimate net loss" which is defined in paragraph III as being the loss after making proper deductions for "all recoveries, salvages and other insurances." We construe that language, as did the trial court, to mean that the Zurich coverage is to be applied in order to arrive at ultimate net loss to which the excess coverage provided by the Lloyd's policies is then applicable.[3] Accordingly, the "other insurance" provision in the Maryland policy which according to Zurich would convert the stated excess coverage to pro rata participation, being inconsistent with the terms of the Lloyd's policies, is not incorporated by reference.

This interpretation is supported by the decision of the Supreme Court of Alaska in Marwell Construction, Inc., et al. v. Underwriters at Lloyd's, London, 465 P.2d 298 (Alas.1970). That case involved litigation between various insurers to determine responsibility for a judgment for $80,000 for personal injuries recovered by one Woods, a truck driver, against Marwell Construction, Inc. for asserted negligence by Marwell's employee while unloading the truck. The judgment was paid by General Accident Fire and Life Assurance Corp., Ltd. (General Accident), Marwell's insurer, and it sought reimbursement from General Insurance Company of America (General Insurance) and Underwriters at Lloyd's, London (Lloyd's), the primary and excess insurance carriers for the trucking firm which employed Woods.

One of the many questions considered by the Alaska Court was whether Lloyd's had any liability until after exhaustion of the coverages of General Accident and General Insurance which were $100,000 and $25,000 respectively. The court held that Lloyd's, whose policy contained essentially the same "ultimate net loss" provision that we here consider, had no liability until exhaustion of the primary coverage of both General Accident and General Insurance. Since the judgment did not exceed the combined total of those two coverages, the loss was apportioned between the two of them.

See also Liberty Mutual Insurance Company v. Truck Insurance Exchange, 245 Or. 30, 420 P.2d 66 (1966) cited and relied upon by the Supreme Court of Alaska in Marwell; also 8 Appleman, Insurance Law and Practice, § 4914.

As previously indicated, we hold that the two Lloyd's policies provided first and second excess coverage of $25,000 and $50,000 respectively after $25,000 primary coverage provided to Swift by Maryland, but such excess was applicable only to ultimate net loss. Under the policy definitions, ultimate net loss was to be determined after making deductions for "all recoveries, salvages and other insurances". We hold that this required application of the Zurich coverage before Lloyd's incurred any liability.

Judgment affirmed.

All of the Judges concur.

---

3. Zurich would construe "other insurances" in the "ultimate net loss" provision as meaning only the primary insurance specifically named in the Lloyd's policies or as being determined under the Maryland "other insurance" clause which it says would include the Maryland, Lloyd's and Zurich insurance on a pro rata basis. We reject both of these interpretations.