663 F.2d 751
 ALLEGHENY AIRLINES, INC., Plaintiff Judgment-Creditor Appellant,
v.
FORTH CORPORATION and John R. Barney, Jr., Administrator of
the Estate of Robert W. Carey, Deceased,
Defendants Judgment-Debtors,
and
Insurance Company of North America and Employers Mutual
Liability Insurance Company of Wisconsin,
Garnishee Defendants-Appellees.
 No. 80-2598.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1981.
Decided Nov. 9, 1981.
 
 1
 Walter E. Rutherford, Haight, Gardner, Poor & Havens, New York City, for plaintiff judgment-creditor appellant.
 
 
 2
 Arthur P. Kalleres, Indianapolis, Ind., Michael R. Gallagher, Cleveland, Ohio, for garnishee defendants-appellees.
 
 
 3
 Before SWYGERT and FAIRCHILD, Senior Circuit Judges, and THOMAS, Senior District Judge.*
 
 
 4
 DANIEL HOLCOMBE THOMAS, Senior District Judge.
 
 
 5
 The underlying case arose from a collision which occurred over Fairland, Indiana on September 9, 1969, between an Allegheny Airlines DC-9 commercial aircraft (registry Number N-988VJ) and a Piper Cherokee general aviation aircraft (Registry Number N-7374J) piloted by Robert W. Carey and owned by Forth Corporation. Both aircraft were totally destroyed in the collision and all occupants were fatally injured.[1]
 
 
 6
 Death actions were brought on behalf of the estates of the deceased occupants of the aircraft against Allegheny Airlines, the United States of America, Lee LeMay, as Administrator of the Estate of Robert W. Carey, deceased,[2] and Forth Corporation. In these actions Allegheny Airlines and the United States asserted claims for indemnity and contribution against their codefendants. Subsequently, all the death actions were settled by the United States and Allegheny for $15,644,500. Allegheny funded $10,332,666.67, or 66%, and the United States funded $5,311,833.33, or 34%. Neither the Forth Corporation nor the Estate of Carey contributed anything towards the settlements.
 
 
 7
 The Insurance Company of North America (INA) had issued Aircraft Policy ANM 15 98 12 (INA policy) to Forth Corporation and it was in effect on the date of the accident. The INA policy had a $1,000,000 limit of liability, of which Carey, as pilot, was covered for $50,000 and Forth was covered for $950,000. In February 1972, INA proffered its $1,000,000 policy limits in settlement. This offer was rejected, but remained outstanding during the litigation. INA paid the sum of $4,250 to settle certain ground claims, leaving a balance remaining of the $1,000,000 policy at $995,750.
 
 
 8
 Prior to the accident, Brookside Corporation, the corporate parent of Forth Corporation, was the owner of an insurance policy issued by Employers Mutual Liability Insurance Company of Wisconsin (now known as Wausau Insurance Companies) (Wausau) entitled "Excess Umbrella Policy", policy number 1920 04 026512 (Wausau policy), with policy limits of $1,000,000, which was in full force at the time of the accident.
 
 
 9
 The claims of Allegheny Airlines and the United States for indemnity and contribution from Forth and the Estate of Carey were tried on June 14, 1976, to a jury. The jury found the United States 36 percent at fault, Allegheny 22 percent at fault, Forth Corporation 21 percent at fault and the Estate of Carey 21 percent at fault.[3]
 
 
 10
 On August 17, 1976, the District Court entered judgment in the indemnity/contribution action and adjudged that Allegheny was entitled to recover from Forth, the sum of $2,169,860 and from the Estate of Carey, the sum of $2,169,860 and that the United States of America was entitled to recover from Forth the sum of $1,115,485 and from the Estate of Carey, the sum of $1,115,485. Allegheny opposed the entry of judgment on the ground that the government had not paid more than its pro rata share and was not entitled to contribution.
 
 
 11
 On September 9, 1976, INA paid to the Clerk of the District Court the sum of $995,750, which represented the funds remaining in the INA policy. The deposit was accompanied by a Notification Payment of Judgment.[4] Once the money was deposited in the court, the United States claimed the entire proceeds pursuant to 31 U.S.C. § 191, the federal priority statute. Since Allegheny contested the right of the government to receive any of the proceeds, the question of who was entitled to the deposited funds had to be resolved on appeal. Upon stipulation of Allegheny and the United States, the Court directed the Clerk to invest the funds in Treasury Bills pending the outcome of the appeal.
 
 
 12
 On December 10, 1976, Allegheny noticed an appeal and on November 1, 1978, this Court reversed the District Court's judgment and remanded Allegheny's claim for contribution and indemnification to the District Court with instructions to enter judgment in favor of Allegheny against Forth in the amount of $6,570,690, and to order the INA policy proceeds which were deposited in the Registry of the District Court paid to Allegheny to the exclusion of the government in partial satisfaction of its judgment against Forth and the Estate of Carey. This Order became final on or about February 1, 1979.
 
 
 13
 On March 16, 1979, pursuant to the remand of this Court, the District Court ordered that Allegheny was entitled to recover $6,570,690 from Forth and the Estate of Carey and further ordered that the effective date of the judgment should be August 17, 1976. Pursuant to this judgment on or about March 28, 1979, the Clerk of the District Court paid Allegheny $995,750, plus the interest that had accrued thereon.
 
 
 14
 On or about August 16, 1979, Allegheny moved for summary judgment against INA alleging that INA owed interest on the entire $6,570,690 judgment from August 17, 1976. Allegheny also moved for summary judgment against Wausau alleging that Wausau wrongfully denied coverage to Forth under the excess umbrella policy and that Wausau owed Allegheny $1,000,000 plus interest on the entire judgment. Both INA and Wausau filed cross-motions for summary judgment.
 
 
 15
 On October 14, 1980, the District Court denied both of Allegheny's motions for summary judgment and granted both INA's and Wausau's cross-motions for summary judgment. The District Court ruled that INA was required to pay interest on the face amount of the policy up until the time it deposited said sum in court, but that Allegheny was barred from collecting the interest by accord and satisfaction, waiver, laches and binding election. The District Court also held that Forth was a named insured under the Wausau policy and as such came under the exclusionary clause for aircraft owned by the named insured and therefore, there was no coverage under the Wausau policy. Allegheny thereafter filed notice of appeal. We affirm the District Court on its interpretation of the Wausau policy, but reverse its decision on the INA policy for reasons herein given.
 
 
 16
 The issues before this Court with respect to the INA action are:
 
 
 17
 1. Whether INA is obligated to pay interest on the entire amount of judgment rendered against its insureds:
 
 
 18
 2. If so, whether INA's obligation for interest ceased when the policy limits were paid; and
 
 
 19
 3. Whether the actions of Allegheny constituted accord and satisfaction, waiver, estoppel and/or laches so as to bar Allegheny from recovery of such interest.
 
 
 20
 The issues before this Court with respect to the Wausau action are:
 
 
 21
 1. Whether the Forth Corporation, identified in the policy as an "additional insured", was a "named insured" and therefore not entitled to coverage under a clause which excluded coverage for "aircraft owned by the named insured"; and
 
 
 22
 2. Whether the District Court properly granted summary judgment based on the language of the Wausau policy.
 
 
 23
 The District Court held that INA was only required to pay interest on the face amount of the policy, and then determined that the actions of Allegheny barred it from recovery of any interest which would have accrued.
 
 
 24
 The INA policy period ran from January 1, 1969, to January 1, 1970. Paragraph 28(b) of the policy provided in part:"As respects such insurance as is afforded by the other terms of this policy ... the company shall:
 
 
 25
 (b) pay ... all interest accruing after the entry of judgment until the company has paid, tendered or deposited in court, such part of such judgment as does not exceed the limit of the company's liability thereon....
 
 
 26
 The company agrees to pay the amounts incurred under this insuring agreement, except settlement of claims and suits, in addition to the applicable limit of liability of this policy."
 
 
 27
 Although INA paid into the court registry $995,750 on September 9, 1976, the payment did not include interest on the judgment from the date of entry of judgment of August 17, 1976. The District Court found that paragraph 28(b) obligated INA to pay interest on the portion of judgment covered by the applicable limit of liability of the INA policy from the date of judgment until September 9, 1976, when the principal balance was deposited into the Court. This interest, based on the Indiana statutory rate of eight percent (8%), was computed by the Court to be $5,111.06. After determining that INA was liable for interest on the policy limits, the Court then determined that Allegheny's conduct barred it from recovery of this interest. In barring Allegheny from recovery, the Court relied on the equitable defenses of accord and satisfaction, estoppel, waiver, laches and binding election.
 
 
 28
 Allegheny contends that the position taken by the District Court is erroneous because it is contrary to the interpretation given to the interest clause by the casualty insurers' trade association, the National Bureau of Casualty Underwriters, and is contrary to the position adopted by the vast majority of jurisdictions. INA alleges that it was not a member of the National Bureau and that its comments are not applicable to the INA policy. INA further contends that the INA policy contains phrases of limitation which set the maximum bounds for the clauses within the INA policy and contains clear and unambiguous terms which determine when the interest ceases to run.
 
 
 29
 Because INA is not a member of the National Bureau of Underwriters, it cannot be held to the standards of that association. This Court, however, may look to the standards of the association in its determination of interpretations given to terms used in the casualty insurers' industry. In this case, it is unnecessary to determine if the National Bureau standards are indicative of the industry. There is a vast amount of case law which examines the question of whether interest should be paid on the entire amount of judgment or just on the policy limits, and when the interest ceases to run.
 
 
 30
 In its Conclusions of Law, the District Court stated that "Allegheny's claim for interest is limited to interest on that portion of the judgment covered by the applicable limit of liability of INA's policy." The Court cites no law for its conclusion. There is no evidence that Indiana law would or would not support this conclusion. Courts are divided on the meaning of the phrase "all interest accruing after the entry of judgment." Cases in the majority of jurisdictions[5] hold that this phrase extends liability to interest on the entire amount of the judgment, while cases applying the law in the minority of jurisdictions[6] limit the liability to interest on the sum of the insurers' total liability as designated by the policy limit. Thus, under the prevailing law in the majority of the jurisdictions, a liability policy obligates the insurer to pay interest on the amount of the judgment obtained against the insured without regard to the policy limits. This Court, therefore, is unwilling to affirm the unsupported conclusion of the District Court that interest is owed solely on the amount of the policy limits.
 
 
 31
 INA argues that the phrase "as respects such insurance as is afforded by the other terms of this policy" is a phrase of limitation which mandates that interest will be paid only on sums within the policy limits. Appellee INA cites Knippen v. Glen Falls Ins. Co., 564 F.2d 525 (D.C.Cir.1977) in support of this theory. Although this Court is of the opinion that the phrase "as respects such insurance as is afforded by the terms of this policy" is limiting language, we do not read this phrase as permitting INA to avoid liability for interest on the entire judgment. INA contends that this phrase limits its liability to the "policy limits." The language in paragraph 28 clearly sets forth the duty of INA to pay interest on the entire judgment. Once INA "has paid, tendered or deposited in court, such part of such judgment as does not exceed the limit of the company's liability" the duty of INA to pay interest, and therefore, its liability to pay interest, ceases. See, Knippen, supra. We are of the opinion that the phrase "as respects such insurance as is afforded by the terms of this Policy" limits the duty to pay interest solely with respect to time interest will run and not with respect to the amount of the liability.
 
 
 32
 Allegheny contends that INA failed to make a valid tender of payment in that it did not include all interests and costs due when it paid $995,750 into the court on September 9, 1976. The clear and unambiguous language of the INA policy states that interest is owed until the Company deposits in court its principal policy limits. See, Knippen, supra. The District Court held that "interest ceased to accrue as of September 9, 1976, when the principal balance of INA's policy proceeds were paid into court." We agree.
 
 
 33
 The District Court determined that even though INA was obligated to pay interest from the date of judgment until September 9, 1976, that Allegheny was barred from recovery of such interest because of accord and satisfaction, estoppel, waiver, laches and binding election. The Court determined these defenses to be effective based on combinations of the following: Allegheny having actual or constructive knowledge of the terms of the policy, Allegheny having received Notification of Payment and failing to assert an objection, Allegheny having stipulated and thereby exercising control over the payment for investment purposes, Allegheny having accepted the policy proceeds paid into Court on the terms specified in the Notification and Allegheny having delayed in asserting its claim for interest. With this determination, we cannot agree.
 
 
 34
 The record indicates that Allegheny did not voluntarily relinquish or intentionally delay any claims which it had for the accrued interest. Allegheny was not in a position to assert any rights to the interest until it was determined that Allegheny was entitled to the deposited funds. After the jury verdict, the United States claimed all the proceeds of the liability policy under the federal priority statute. On August 17, 1976, the Court determined that the United States was entitled to the judgment. INA deposited the remaining proceeds, the "full extent of the policy," in the Court Registry 23 days later on September 9, 1976. Allegheny, however, objected to the judgment and proceeded to appeal. It was not until March 16, 1979, that Allegheny received judgment in its favor in regard to the funds deposited. Allegheny contends that it had informal discussions with INA regarding the interest which it believed to be outstanding, but negotiations broke down and this proceeding was commenced on August 16, 1979.
 
 
 35
 The record does not support the District Court's reliance on the defenses stated to bar Allegheny's recovery of the interest. Accord and satisfaction is not applicable. The law in Indiana recognizes that a sum offered with an express condition that it is paid in full satisfaction of an obligation constitutes accord and satisfaction. Gearhart v. Baker, 393 N.E.2d 258 (Ind.App.1979). The record does not reflect that the deposited sums represent "full satisfaction" but only indicates that this was the "full extent of the policy." No mention is given to interest which may have accrued. INA cannot relieve itself of its obligation to pay interest by simply depositing the policy limits within the registry of the Court.
 
 
 36
 The doctrine of equitable estoppel requires a misrepresentation which results in a detrimental reliance. Saverslak v. Davis-Cleaver Produce Co., 606 F.2d 208 (7th Cir. 1979), cert. denied, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). The record does not indicate that INA was misled in any way by Allegheny or that INA detrimentally relied on any representations of Allegheny. INA had a legal obligation to pay interest on the judgment until it deposited the funds in Court. The fact that the right to the deposited funds was not determined until almost three years after the deposit does not suggest that Allegheny lulled INA into "a false assurance that strict compliance with a contractual duty (would) not be required." Saverslak v. Davis-Cleaver Produce Co., supra. Allegheny's rights to the funds did not in actuality accrue until the March 1979 judgment. At that time, Allegheny had the right to pursue any remedy to obtain the interest. It chose negotiation and then suit.
 
 
 37
 The defense of waiver is equally inapplicable to this case. Waiver is the "intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right." Templer v. Muncie Lodge, 50 Ind.App. 324, 97 N.E. 546 (1912); Saverslak v. Davis-Cleaver Produce Co., supra. INA contends that Allegheny's silence upon receipt of notification of the funds and its acceptance of the money warrants the inference that it accepted the money as a discharge of INA's obligations. Under the terms of the contract, INA was obliged to pay interest on the judgment for a set period of time. As previously stated, Allegheny had no right to the funds until after the March 1979 judgment. At that time it had a right to pursue any available remedies. This suit was resultant. There is no evidence in the record that Allegheny waived its rights to the interest due.
 
 
 38
 Laches is an equitable defense which involves inexcusable delay in asserting a right, implied waiver and circumstances causing prejudice to an adverse party. State ex rel. Crooke v. Lugar, 171 Ind.App. 60, 354 N.E.2d 755 (1976). This Court has determined that the record shows no evidence of implied waiver or prejudice to INA. Allegheny filed suit within five months of obtaining judgment in March 1979. This certainly could not constitute inexcusable delay. Allegheny had to first establish its right to the funds before it could assert a claim against INA for interest.
 
 
 39
 The doctrine of binding election is also inappropriate. Election of remedies requires an intentional choice of remedies. New York Central Railroad Co. v. Churchill, 140 Ind.App. 426, 218 N.E.2d 372 (1966). The doctrine of binding election applies when, after the election of one remedy, the party pursues another remedy which is inconsistent with the first. In this case there is no inconsistency of remedies. Allegheny obtained the deposited funds from the Court after it was awarded judgment, and then proceeded with its claim for interest which was not paid on the deposited funds. This in no way constitutes a "binding election" which in any way would prohibit Allegheny to proceed to suit on the interest owed.
 
 
 40
 It is evident that the record does not support the application of these defenses to the recovery of interest by Allegheny. The District Court was clearly erroneous in holding these defenses applicable.
 
 
 41
 The second segment of the appeal concerns whether or not the scope of the Wausau excess umbrella liability policy includes coverage of aircraft owned by Forth Corporation. The District Court held that Forth, as an additional insured, was a "named insured" and therefore within the exclusionary clause which denied coverage to aircraft owned by the "named insured."
 
 
 42
 Wausau had issued to Brookside Corporation, the parent corporation of Forth Corporation, an excess umbrella liability policy (Wausau policy), which identified Brookside Corporation as the "Named Insured" in Item No. 1 of the policy declarations. The Wausau policy period ran from January 1, 1969, to January 1, 1970. The limit of liability was stated as $1,000,000 in Item No. 3 of the declarations and Item No. 6 of the declarations set forth coverage for liability other than automobiles in the amount of $1,000,000 each person, single limit each occurrence. Forth Corporation was later included on the Wausau policy as an "additional insured" in an "Additional Insured Endorsement" to be effective the term of the policy.
 
 
 43
 The basic coverage under the Wausau policy is set forth in Section I, which provides that the insurer agrees:
 
 
 44
 "... to pay on behalf of the insured all sums which the insured shall become obligated to pay, either by adjudication or compromise, by reason of the liability imposed upon the insured by law or assumed by the insured under any contract for damages because of personal injury and property damage, and all expenses incurred by the insured or the company, hereinafter called 'loss'."
 
 
 45
 Under subsection (c) of the section of the Wausau policy entitled "Exclusions", coverage was not provided "to any aircraft owned by the named insured, including the loading and unloading thereof." As a result, aircraft owned by the named insured were not afforded liability protection under the Wausau policy.
 
 
 46
 Item No. 1 of the Declarations of the Wausau policy designated the named insured under the policy as follows:
 
 
 47
 "Item 1. Named Insured and Address
 
 Brookside Corporation
 
 48
 (See Endorsement # 1)
 
 
 49
 McCordsville, Indiana 46055"
 
 
 50
 Endorsement # 1, referred to above, is an endorsement naming among others, "Forth Corporation doing business as Indianapolis Brookside Air Park" under the Wausau policy in the following manner:
 
 
 51
 "Names of Additional Insureds
 
 Forth Corporation Doing Business As
 Indianapolis Brookside Air Park
 Forth-Rite Division
 E. H. Baare Manufacturing Company
 Additional Premium: $150.00
 
 52
 (Flat Charge)"
 
 
 53
 The terms of the endorsement naming Forth under the Wausau policy provide as follows:
 
 
 54
 "It is agreed that such insurance as this policy affords ... to the insured named in Item 1 of the declarations, herein called the "Primary Insured," applies to the additional insured(s) named below...."
 
 
 55
 For purposes of coverage under Section V of the Wausau policy, entitled "Definitions", only two types of insureds exist under the policy: "named insureds", for which no definition appears since named insureds are expressly named in the policy, and unqualified "insureds".[7]
 
 
 56
 Whether an additional insured added by an endorsement is a "Named Insured" or an "Insured" other than a "Named Insured" is determined primarily by the intent of the parties to the policy and by the language of the policy. Swift & Co. v. Zurich Insurance Co., 511 S.W.2d 826 (Mo.1974); Holthe v. Iskowitz, 31 Wash.2d 533, 197 P.2d 999 (1948). The parenthetical phrase "See Endorsement # 1" contained on the Declaration page under the heading "Named Insured and Address" and the naming of Forth in that endorsement manifest the intent of the parties that Forth would be a "Named Insured" under the policy. This was a finding of the District Court and with it we agree. Forth, although listed as an "Additional Insured", held the status of the "Named Insured". Forth was to be afforded the same protection as Brookside and this was possible if Forth was, as previously determined, a "Named Insured". Under this policy, there is no question that Forth was within the category of "Named Insured" and thus was an "Insured" by reason of being a "Named Insured".
 
 
 57
 Under the exclusion clause of Subsection (c), there was no coverage for aircraft owned by a named insured. The District Court held that "since Forth Corporation is a named insured under said policy, the policy does not provide aircraft liability coverage on behalf of Forth Corporation ... involving its own aircraft." The Court went on to say that "(p)ursuant to Exclusion (c) the language of Endorsement # 1, and the policy as a whole, Forth Corporation has no coverage for accidents involving its owned aircraft and (Wausau) has no duty to insure or indemnify Forth Corporation or the Carey Estate as a result of the liability arising from the September 9, 1969, collision involving an aircraft owned by Forth Corporation and operated by Robert W. Carey."
 
 
 58
 Employers Mutual (now known as Wausau Insurance Companies) has prevailed against Allegheny and is entitled to recover all of its costs from Allegheny. Allegheny has prevailed in part against INA and is entitled to recover one-half of its costs from INA.
 
 
 59
 The case, therefore, is remanded to the District Court with instructions that the District Court enter an Order and Judgment in accordance with this opinion.
 
 
 60
 Affirmed in part, Modified and Remanded in part.
 
 
 
 *
 The Honorable Daniel Holcombe Thomas, Senior District Judge of the United States District Court for the Southern District of Alabama, is sitting by designation
 
 
 [1]
 The prior history of this litigation is detailed in Allegheny Airlines, Inc. v. LeMay, 448 F.2d 1341 (7th Cir. 1971), cert. denied, 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 553 (1971); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975) (Kohr I), on remand, Allegheny Airlines, Inc. v. United States, 420 F.Supp. 1339 (S.D.Ind.1976), aff'd in part and rev'd in part, Kohr v. Allegheny Airlines, Inc., 586 F.2d 53 (7th Cir. 1978) (Kohr II); and Allegheny Airlines, Inc. and GECC Leasing Corp. v. United States, 504 F.2d 104 (7th Cir. 1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975) (Allegheny I), on remand, Allegheny Airlines, Inc. v. United States, 420 F.Supp. 1339 (S.D.Ind.1976), aff'd in part and rev'd in part, Kohr v. Allegheny Airlines, 586 F.2d 53 (7th Cir. 1978)
 
 
 [2]
 On April 24, 1978, John R. Barney, Jr., was substituted for Lee M. LeMay as Administrator of the Estate of Robert Carey, deceased. Hereinafter, the "Estate of Carey" will be used to designate the legal administrator of the Carey Estate
 
 
 [3]
 It was stipulated by Forth that it was also legally responsible for the 21 percent fault attributable to Robert W. Carey, deceased, and that its ultimate liability was 42 percent
 
 
 [4]
 The Notification stated in part:
 (N)otification of payment of the full extent of the liability policy of the Insurance Company of North America and payment of said funds to the Clerk pursuant to the Order of this Court, is hereby made and forwarded to all parties.
 
 
 [5]
 Pawlik v. State Mutual Automobile Ins. Co., 302 F.2d 255 (7th Cir. 1962); United Services Automobile Association v. Russum, 241 F.2d 296 (5th Cir. 1957); American Auto Insurance Co. v. Fulcher, 201 F.2d 751 (4th Cir. 1953); High v. Southern Farm Bureau Casualty Ins. Co., 247 Ark. 373, 445 S.W.2d 507 (1969); Security Ins. Co. v. Houser, 191 Colo. 189, 552 P.2d 308 (1976); State-Wide Ins. Co. v. Flaks, 233 So.2d 400 (Fla.), cert. dismissed, 238 So.2d 427 (1970); Gass v. Carducci, 52 Ill.App.2d 394, 202 N.E.2d 73, supp. op. 52 Ill.App. 402 A, 203 N.E.2d 289 (1964); Stamps v. Consolidated Underwriters, 208 Kan. 630, 493 P.2d 246 (1972); Pittman v. Fowler, 191 So.2d 172 (La.App.1966); Re Estate of Tichota, 191 Neb. 484, 215 N.W.2d 885 (1974); Powell v. T.A. & C. Taxi, Inc., 104 N.H. 428, 188 A.2d 654 (1963); Germer v. Public Service Mutual Ins. Co., 99 N.J.Super. 137, 238 A.2d 713 (1967); Coventry v. Steve Koren, Inc., 1 Ohio App.2d 385, 205 N.E.2d 18 (Ohio 1965); Draper v. Great American Ins. Co., 224 Tenn. 552, 458 S.W.2d 428 (1970); Home Indemnity Co. v. Muncy, 449 S.W.2d 312 (Tex.Civ.App.1969); Weber v. Biddle, 4 Wash.App. 519, 483 P.2d 155 (1971); McPhee v. American Motorists Ins. Co., 57 Wis.2d 669, 205 N.W.2d 152 (1973)
 
 
 [6]
 Standard Accident Ins. Co. v. Winget, 197 F.2d 97 (9th Cir. 1952); Snider v. State Farm Mutual Auto Ins. Co., 360 F.Supp. 929 (D.W.Va.1973); United States Fidelity & Guaranty Co. v. Hotkins, 8 Misc.2d 296, 170 N.Y.S.2d 441 (1957); Bossert v. Douglas, 557 P.2d 1164 (Okl.App.1976); Crook v. State Farm Mutual Auto Ins. Co., 235 S.C. 452, 112 S.E.2d 241 (1960)
 
 
 [7]
 The Wausau policy states:
 "Definition of Insured. The unqualified word 'insured' includes the named insured and also includes:
 
 
 [1]
 Except with respect to ownership, maintenance and use of (a) automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, or (b) aircraft, any executive officer, director, stockholder, partner or employee of the named insured while acting within the scope of his duties as such, and any organization or proprietor with respect to the real estate management for the named insured
 
 
 [2]
 Any person, organization, trustee or estate to whom the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the named insured or to facilities of or used by the named insured
 
 
 [3]
 Any person while using an automobile owned by the named insured or hired for use by or on behalf of the named insured, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of an automobile not owned or hired by the named insured in the business of the named insured: provided, that the insurance with respect to any person or organization other than the named insured does not apply under this subdivision 3 of this insuring agreement:
 (a) To any person or organization, or any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof.
 (b) With respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee.
 (c) With respect to any non-owned automobile, to any executive officer if such automobile is owned in full or in part by him or a member of his household."