# United States Court of Appeals
## For the First Circuit

No. 11-1208

YOMAR VÁZQUEZ-FILIPPETTI; LUZ E. FILIPPETTI-PÉREZ;
MARLYN VÁZQUEZ-FILIPPETTI; YOHANNIE VÁZQUEZ-FILIPPETTI,

Plaintiffs, Appellants,

v.

COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO,

Defendant, Appellee,

BANCO POPULAR DE PUERTO RICO; FEDERAL INSURANCE COMPANY;
JOSÉ TORO-RODRÍGUEZ; FÉLIZ TORO-RODRÍGUEZ; CECILA PETITÓN-
GARCIA; CONJUGAL PARTNERSHIP, TORO-PETITÓN,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Lipez and Kayatta,
Circuit Judges.

David W. Roman, with whom Jose Luis Ubarri, Ubarri & Roman,
Luis R. Mena-Ramos and Luis R. Mena-Ramos Law Offices were on
brief, for appellants.
Raymond M. Pérez Brayfield, with whom R. Pérez Brayfield Law
Offices was on brief, for appellee.

July 15, 2013

**HOWARD, Circuit Judge**.  The plaintiffs-appellants were awarded six million dollars in damages for injuries sustained in an automobile accident.  Defendant-appellee Cooperativa de Seguros Múltiples de Puerto Rico ("Cooperativa") had issued an automobile liability insurance policy that provided coverage for the accident in the amount of $100,000.  The question before us concerns the extent of Cooperativa's responsibility for postjudgment interest.

**I.**

A.  Procedural Background

Yomar Vázquez-Filippetti was standing on a sidewalk withdrawing money from an ATM when José Toro-Rodríguez, driving a 1996 Mercury Grand Marquis, struck her from behind.  Vázquez sustained severe injuries as a result, including the loss of her right leg.  Toro was insured under a policy written by Cooperativa, to a limit of $100,000 for bodily injury to any one person.  The car belonged to Toro's brother, Félix Toro-Rodríguez, who was the named insured.

Vázquez, her mother, and two siblings brought a diversity action in the United States District Court for the District of Puerto Rico against the Toro brothers, Cooperativa, and the bank that owned the ATM.  The plaintiffs alleged that the bank had negligently designed its ATM facility, and that the remaining defendants were liable for Toro's negligent driving.  A jury returned a verdict for the plaintiffs, awarding them a total of six

-2-

million dollars in damages.  The jury apportioned seventy-five percent of the liability to the bank and twenty-five percent to Cooperativa and its insureds.

The district court entered judgment for the plaintiffs on March 22, 2005.  Consistent with the jury's apportionment of liability, the bank was ordered to pay four-and-a-half million dollars and Cooperativa and its insureds one-and-half million dollars.  The judgment was amended on August 16, 2005 to specify that the defendants were jointly and severally liable for the full amount of the judgment.

Cooperativa and its insureds did not appeal the judgment. On September 29, 2005, Cooperativa paid into the court $75,000, the remainder of its policy limit.[1]  The plaintiffs responded with an "emergency motion that notice be taken of the waiver of insurance policy limits" by Cooperativa.  Before the district court reached the merits of that motion, the bank filed an appeal of the substantive verdict.  We reversed the judgment against the bank on sufficiency-of-the-evidence grounds.  See <u>Vázquez-Filippetti</u> v. <u>Banco Popular de P.R.</u>, 504 F.3d 43 (1st Cir. 2007).

With the bank out of the picture, the plaintiffs renewed their efforts to hold Cooperativa responsible for the full judgment, despite its $100,000 policy limit.  They argued that

_____

[1] Cooperativa had already paid $25,000 to Vázquez's father to settle a state suit arising out of the same accident.

-3-

Cooperativa had waived its policy limit by failing to raise the issue in a specific and timely manner. The district court rejected that contention as being belied by the record. The plaintiffs appealed the ruling, and we affirmed. See Vázquez-Filippetti v. Cooperativa de Seguros Múltiples, No. 08-2431 (1st Cir., Dec. 21, 2009).

In the meantime, the district court amended the judgment, holding the Toro brothers and Cooperativa liable for the six million dollars in damages.[2] After losing the battle to set aside the policy limit, the plaintiffs sought to compel Cooperativa to pay postjudgment interest on the full six-million-dollar judgment. The court denied the motion on the grounds that it was untimely, and that the policy did not provide coverage for postjudgment interest. This order is the subject of the instant appeal.

---

[2] This most recent amended judgment provides that the Toro brothers and Cooperativa are "jointly and severally liable to Plaintiffs for the full amount of the Judgement." The judgment was entered three days after the district court denied the plaintiffs' motion to set aside Cooperativa's policy limit. To the extent that the judgment can be read to suggest that the plaintiffs could nonetheless collect the full judgment from Cooperativa, an argument that the plaintiffs do not make, for aught that the record discloses, this is a clerical error subject to correction at any time pursuant to Fed. R. Civ. P. 60(a). See Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007) ("A motion under [Rule 60(a)] is appropriate where . . . the judgment failed to reflect the court's intention.") (internal quotation marks omitted).

B.  Cooperativa's Policy

        The relevant terms and conditions of Cooperativa's policy are as follows.[3]  The policy's "Part A--Civil Liability Coverage" contains two relevant sections.  The first section, titled "Insurance Agreement," obligates Cooperativa to:

> pay the damages for "bodily harm" or "property damages" for any "insured" that is legitimately liable as a result of the automobile accident.  The damages include the pre-sentence interest that is ordered against the "insured"[.]  [W]e will payout or defend, as we deem appropriate, any claim or legal complaint that requests the payment of these damages.  In addition to our liability limit, we will pay all the defense costs in which we may incur.  Our duty to payout or defend ends when our liability limit has been exhausted regarding this coverage.

The following section--"Supplementary Payments"--provides in pertinent part:

> In addition to our liability limits, we will pay . . . on the "insured's" behalf . . . . [t]he interests accrued after having issued a ruling in any judicial claim we defend.  Our duty of paying interests ends when we offer to pay the corresponding part of the ruling that does not exceed our liability limit for that coverage.

        The term "liability limits" is defined in Part A as "[t]he liability limit that appears in the Statements for this coverage[, which] is our maximum liability limit for all the resulting damages of any automobile accident."  "Liability limits"

_____

        [3] Written in Spanish, the policy is identified as PAP-1193983. We rely on the certified English translation provided by the parties.

-5-

for bodily injury are listed in the "Statements" section as $100,000 for each person and $300,000 for each accident.

## II.

The plaintiffs challenge the district court's determination that Cooperativa is not responsible for paying postjudgment interest. They argue that, under the policy and the laws of Puerto Rico, Cooperativa is liable for postjudgment interest on the six-million-dollar judgment from the date of the entry of the original judgment until it pays such interest in full.[4] In response, Cooperativa maintains that the plaintiffs forfeited any entitlement to postjudgment interest by failing to request it in a timely manner. Whether the plaintiffs are entitled to postjudgment interest presents a legal issue that we review de novo. See Radford Trust v. First Unum Life Ins. Co. of Am., 491 F.3d 21, 24 (1st Cir. 2007).

To begin, the plaintiffs tell us that the laws of Puerto Rico require Cooperativa to pay postjudgment interest. Yet it is well established that federal law governs the entitlement to postjudgment interest in any federal civil suit, including a diversity suit such as the instant action. Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 146 (1st Cir. 2009); Cummings v. Standard Register Co., 265 F.3d 56, 68 (1st Cir. 2001). Section 1961(a) of the Judicial Code entitles the prevailing party in federal court to

---

[4] To date, Cooperativa has not paid any postjudgment interest.

postjudgment interest "from the date of the entry of the judgment" at the rate fixed in the statute.  28 U.S.C. § 1961(a).  The statute aims to "compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990) (internal quotation marks omitted).  Because postjudgment interest "follows as a legal incident from the statute providing for it," Waggoner v. R. McGray, Inc., 743 F.2d 643, 644 (9th Cir. 1984) (internal quotation marks omitted), the court has no discretion to deny it.[5]

The district court denied the plaintiffs' request for postjudgment interest as untimely.  The court agreed with Cooperativa that Local Rule 7.1(b) required the plaintiffs to request postjudgment interest within ten days of Cooperativa's deposit of the policy limit.  Because they did not seek interest until June 2010, nearly five years after Cooperativa deposited the funds, the court held that the plaintiffs waived any entitlement thereto.  We disagree.  The cited rule relates to the timeliness of an objection to a motion by the opposing party, and says nothing

---

[5] Given the mandatory terms of Section 1961, the plaintiffs' failure to cite the federal statute does not result in a forfeiture of the statutory entitlement.  See Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1104 (7th Cir. 1990).

-7-

about the time frame for a successful party to request postjudgment interest.

Not surprisingly, Cooperativa cites no authority for the proposition that postjudgment interest is waived absent a timely objection to a deposit of funds. Requiring the plaintiffs to take affirmative steps to preserve their right to postjudgment interest, when such interest runs automatically by operation of law, makes little sense in the circumstances of this case. Indeed, the prevailing plaintiff is entitled to postjudgment interest regardless of whether the judgment provides for its payment, United States v. Michael Schiavone & Sons, Inc., 450 F.2d 875, 876 (1st Cir. 1971), and even if the plaintiff fails to appeal its omission, Tinsley v. Sea-Land Corp., 979 F.2d 1382, 1383-84 (9th Cir. 1992). That the plaintiffs here waited until the extent of Cooperativa's liability on the judgment became clear does not preclude them from collecting any postjudgment interest due.

To determine the extent of Cooperativa's liability for postjudgment interest, we turn to the language of the policy. We interpret the policy in accordance with the laws of Puerto Rico. Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 875 (1st Cir. 1993). Article 11.250 of the Puerto Rico Insurance Code provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." P.R. Laws Ann. tit. 26, § 1125. Absent an ambiguity, we

-8-

must interpret the insurance contract according to its "plain meaning, as a whole, and in harmony with the general purposes of the policy."  Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 16 (1st Cir. 2005).  "If the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties."  Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992).

The "Supplementary Payments" provision in Part A of Cooperativa's policy says that, "[in] addition to [the] liability limits," Cooperativa is responsible for "interests accrued after having issued a ruling in any judicial claim we defend."  This type of provision is referred to as a "standard interest clause."  See Fratus v. Republic W. Ins. Co., 147 F.3d 25, 28 (1st Cir. 1998).[6] A clear majority of the courts, including the Supreme Court of Puerto Rico, interpret a standard interest clause as obligating insurers to pay postjudgment interest on the entire amount of the judgment against an insured, even though the policy limit may cover only a portion of the judgment.  Id. at 28-29; see Roldán Medina v. Serra, 5 P.R. Offic. Trans. 705 (P.R. 1976).

---

[6] The district court's docket entry denying the plaintiffs' motion for postjudgment interest incorrectly stated that "the policy at issue did not have a 'standard interest clause.'"  The court referred to a concession to that effect by the plaintiffs, who apparently maintain that view of the policy on appeal.  Their brief makes no reference to the "Supplementary Payments" provision. Nonetheless, in evaluating the plaintiffs' claim to postjudgment interest, we cannot ignore the policy's plain language.

The plain terms of the policy leave no doubt that Cooperativa obligated itself to pay postjudgment interest on the entire judgment against its insureds, notwithstanding the policy limit. Cooperativa's insureds are liable for the full six-million-dollar judgment.[7] Accordingly, Cooperativa is responsible for postjudgment interest on six million dollars.

That leaves us to determine the duration of Cooperativa's obligation to pay postjudgment interest. Under section 1961, postjudgment interest ordinarily begins to accrue as of the date of the original entry of judgment. Cordero v. De Jesus-Mendez, 922 F.2d 11, 17 (1st Cir. 1990). Cooperativa deposited the policy limit in September 2005, approximately five months after the entry of the original judgment. According to the policy, Cooperativa's "duty of paying interests ends when we offer to pay the corresponding part of the ruling that does not exceed our liability limit for that coverage." This plainly tells us that Cooperativa must pay postjudgment interest for the five-month period before it deposited the policy limit.[8]

---

[7] Although the original judgment obligated the insureds to pay one-and-a-half million dollars in damages, the judgment was corrected to indicate that all the defendants bore joint and several liability for the six-million-dollar judgment. When we reversed the judgment against the bank, the insureds remained liable for the full judgment.

[8] Cooperativa argues that it is not liable for postjudgment interest for the five-month period because the original judgment was deficient, as there is no indication that the clerk obtained the court's approval before entering the judgment, in violation of

-10-

The plaintiffs argue that the deposit of the policy limit was insufficient to stop the clock on the accrual of postjudgment interest because Cooperativa failed to pay interest accrued as of the date of deposit. As Cooperativa has yet to pay postjudgment interest, the argument goes, interest on the full judgment continues to accrue against it. The clear and unambiguous terms of the policy preclude the plaintiffs' argument.

To terminate its obligation for postjudgment interest, Cooperativa had to offer to pay the part of the judgment owed under its "liability limit for that coverage." Plainly, "that coverage" is "Part A--Civil Liability Coverage." The term "liability limit" cannot include postjudgment interest, because postjudgment interest is a "supplemental" obligation under Part A of the policy, "[i]n addition to [the] liability limits."

As the surrounding provisions make clear, "liability limit" refers to the applicable policy limit for damages. Cooperativa's chief obligation under Part A is to pay damages for bodily injury or property damage until its "liability limit has been exhausted regarding this coverage." The term "liability

Fed. R. Civ. P. 58. Cooperativa makes this argument for the first time on appeal, and thus we need not consider it. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal."). Although we may affirm the district court's judgment on any basis apparent from the record, the record is at worst ambiguous. We decline to assume irregularity under such circumstances.

-11-

limit" is defined in Part A as Cooperativa's "maximum liability limit for all the resulting damages of any automobile accident," as provided in the Statements. "Liability limits" for bodily injury are listed in the Statements as $100,000 per person and $300,000 per accident. Included in the damages is prejudgment interest. By contrast, postjudgment interest is not part of the damages but a separate and independent obligation. By definition, it is a "supplementary" payment "[i]n addition to [the] liability limits."

To conclude, then, that Cooperativa had to pay accrued postjudgment interest to satisfy payment for the "liability limit" would eviscerate the plain language of the policy. The payment of the policy limit was sufficient under the policy to terminate Cooperativa's obligation to pay postjudgment interest accruing after the date of the deposit.[9] Other courts interpreting nearly identical policy language have come to the same conclusion. E.g., Cox v. Peerless Ins. Co., 774 F. Supp. 83, 87 (D. Conn. 1991); White v. Auto Club Inter-Ins. Exch., 984 S.W.2d 156, 158-59 (Mo. Ct. App. 1998).[10]

---

[9] Of course, postjudgment interest accrued after Cooperativa's deposit of the policy limit remains the obligation of Cooperativa's insureds.

[10] A previous version of the standard interest clause provided that the insurer's duty to pay postjudgment interest continued "until the company has paid, tendered or deposited in court, such part of such judgment as does not exceed the limit of the company's liability thereon." Allegheny Airlines, Inc. v. Forth Corp., 663 F.2d 751, 755 (7th Cir. 1981) (internal quotation marks omitted). Courts interpreting that provision were split as to whether the

In sum, Cooperativa is responsible for postjudgment interest for the period between March 22, 2005, the date of the entry of the original judgment, and September 29, 2005, the date of the deposit of the policy limit, at the rate provided in section 1961.  Under the plain terms of the policy, once Cooperativa paid the policy limit into the court, representing the portion of the judgment owed under the policy, its duty to pay additional postjudgment interest abated even though it had not paid interest accrued to that point.

**III.**

For the aforementioned reasons, we reverse the denial of the plaintiffs' request for postjudgment interest and remand for further proceedings not inconsistent with this opinion.

---

insurer had to pay accrued postjudgment interest in addition to the policy limit in order to stop further accrual of interest. Compare id. at 755, 756, S. Gen. Ins. Co. v. Ross, 489 S.E.2d 53, 56-57 (Ga. Ct. App. 1997), and Levin v. State Farm Mut. Auto. Ins. Co., 510 S.W.2d 455, 458-59 (Mo. 1974), with Sec. Ins. Co. of Hartford v. Houser, 552 P.2d 308, 311 (Colo. 1976), River Valley Cartage Co. v. Hawkeye-Sec. Ins. Co., 161 N.E.2d 101, 104 (Ill. 1959), and Glenn v. Fleming, 799 P.2d 79, 88 (Kan. 1990).  Those courts holding that the insurer's obligation for postjudgment interest continued until postjudgment interest was paid relied heavily on the ambiguity in the word "thereon" and the requirements of a valid "tender" under common law.  See Houser, 552 P.2d at 311; River Valley Cartage Co., 161 N.E.2d at 104; Glenn, 799 P.2d at 88. Neither of those two words are present in the clause before us. Although some courts have held that the previous version does not meaningfully differ from the instant clause, they provided no analysis.  See Sours v. Russell, 967 P.2d 348, 354 (Kan. Ct. App. 1998); Tex. Farmers Ins. Co. v. Miller, No. 03-97-00233-CV, 1997 WL 746027, at *4 (Tex. App. Dec. 4, 1997) (unpublished).  We are unpersuaded that their view is correct.